BROUSE McDOWELL L.P.A.
1001 Lakeside Avenue, Suite 1600
Cleveland, Ohio 44114
Telephone:  (216) 830-6830
Facsimile:  (216) 830-6807
Marc B. Merklin  (MM8195)
Alan M. Koschik  (AK5891)

HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, New York  10016
Telephone:  (212) 592-1400
Facsimile:  (212) 592-1500
Joshua J. Angel (JA-3288)
Paul Rubin (PR-2097)

Attorneys for Creditor,
Veyance Technologies, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                              :
                                                    :
     DANA CORPORATION, *et al.*,              :
                                                    :
           Debtors.                   :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
     VEYANCE TECHNOLOGIES, INC.,               :
     assignee of The Goodyear                  :
     Tire & Rubber Company,                    :  Case No. 07-CV-06169 (DAB)
                                                    :
           Appellant,                 :  (Bankruptcy Appeal)
                                                    :
     vs.                                       :  Judge Deborah A. Batts
                                                    :
     DANA CORPORATION, *et al.*,              :
                                                    :
           Appellee.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## OPENING BRIEF OF APPELLANT VEYANCE TECHNOLOGIES, INC.

# TABLE OF CONTENTS

**Page**

STATEMENT OF APPELLATE JURISDICTION ........................................................ 1

ISSUES PRESENTED ................................................................................................ 2

STANDARD OF REVIEW ....................................................................................... 2

STATEMENT OF THE CASE ................................................................................... 3

    Preliminary Statement ................................................................................................ 3

    Procedural History .................................................................................................... 5

    Statement of Facts ..................................................................................................... 6

    Legal Framework of Appellant's Bankruptcy Court Motion ..................................... 10

ARGUMENT .......................................................................................................... 11

    The Bankruptcy Court Erred by Applying the Wrong Standard to Appellant's Attempt
    To Rebut the Presumption of Delivery of the Claims Bar Date Notice and Concluding
    that Appellant Should Be Presumed To Have Received the Bar Date Notice,
    Notwithstanding the Evidence Presented. ................................................................. 11

    The Bankruptcy Court Erred by Concluding that the Reasons for Appellant's Delay in
    Filing Its Section 503(b)(9) Claims Did Not Warrant a Finding of Excusable Neglect...
    ................................................................................................................................ 17

    The Bankruptcy Court Erred by Finding that the Debtors Would Be Prejudiced by An
    Enlargement of Time For Appellant to File its Section 503(b)(9) Claims. ................. 21

    The Bankruptcy Court Erred by Finding that the Length of Appellant's Delay in Filing
    Its Section 503(b)(9) Claim Was Too Long To Warrant A Finding Of Excusable
    Neglect. ................................................................................................................... 23

CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

Cases

*Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir. 1997)............ 10

*In re AroChem Corp.*, 176 F.3d 610, 620 (2d Cir.1999) ................................................ 2

*In re Au Coton*, 171 B.R. 16, 18 (S.D.N.Y. 1994) ........................................................ 18

*In re Bucknum*, 951 F.2d 204, 207 (9th Cir. 1991) ........................................................ 12

*In re Cassell*, 206 B.R. 853, 857 (Bankr. W.D. Va. 1997) .............................................. 13

*In re Corso,* 328 B.R. 375 (Bankr. E.D.N.Y. 2005) ........................................................ 2

*In re Dodd*, 82 B.R. 924, 928 (N.D. Ill. 1987) ............................................................... 12

*In re Enron Corp.*, 2003 W.L. 21756785 at *5 (Bankr. S.D.N.Y. July 30, 2003) ........... 23

*In re Enron Corp.*, 2003 W.L. 21756785 at *6 (Bankr. S.D.N.Y. July 30, 2006) ........... 13

*In re Enron Corp.*, 298 B.R. 513, 525 (Bankr. S.D.N.Y. 2003) ..................................... 23

*In re Enron Corp.,* 364 B.R. 482 (S.D.N.Y. 2007) .......................................................... 2

*In re Enron Corp.*, 419 F.3d 115 (2nd Cir. 2005) ........................................................... 23

*In re Enron*, 419 F.3d 122 ............................................................................................. 11

*In re Home Network Builders, Inc.,* 2006 WL 3419791, *4 (D.N.J. 2006) ..................... 16

*In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995) ..................................... 23

*In re Khachikyan*, 335 B.R. 121, 125-26 (9th Cir. BAP 2005) ....................................... 16

*In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 128 (3d Cir. 1999)...........21, 23

*In re Papp International, Inc.*, 189 B.R. 939 (Bankr. D. Neb. 1995).........................21, 24

*In re R.H. Macy & Co.*, 166 B.R. 799, 802 (S.D.N.Y. 1994) ........................................ 21

*In re Thomson McKinnon Securities, Inc.*, 159 B.R. 146, 148 (Bankr. S.D.N.Y. 1993).. 24

*In re U.S. Lines, Inc.,* 197 F.3d 631, 138 (2d Cir.1999) ................................................. 2

*In re Wechsler*, 246 B.R. 490 (S.D.N.Y. 2000)........................................................19, 20

*In re Williams*, 185 B.R. 598, 600 (9th Cir. BAP 1995)................................................... 12

*In re Yoder Co.*, 758 F.2d 1114, 1119 (6th Cir. 1985) ...................................................... 15

*Linder v. Trump's Castle Assocs.*, 155 B.R. 102, 108 n. 10 (D.N.J. 1993) ..................... 24

*McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 288 (3d Cir. 2006)...................... 15

*Mony Group, Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138, 143-44 (2d Cir. 2004)
............................................................................................................................................. 3

*Musicland*, 356 B.R. 607 ...................................................................................................... 11

*Pioneer Investment Services Company v. Brunswick Associates Limited Partnership,* 507
U.S. 380, 382-83 (1993).......................................................................... 10, 11, 18, 19

*Tesser v. Bd. of Educ.*, 370 F.3d 314, 318 (2d Cir. 2004)................................................... 2

*United States v. Hooper*, 43 F.3d 26, 28 (2d Cir. 1994) ................................................... 10

Statutes

11 U.S.C. § 546(c) ................................................................................................................... 6

11 U.S.C. §503(b)(9) ............................................................................................................... 3

28 U.S.C. § 158(a)(1)............................................................................................................... 1

28 U.S.C. §158(a) .................................................................................................................... 2

*Weinstein's Evidence* § 301.02[2] (2d ed. 2004).............................................................. 15

*Weinstein's Federal Evidence* § 301.02[3][c] (2d ed. 2007) .......................................... 12

Veyance Technologies, Inc, as assignee[1] of The Goodyear Tire & Rubber Company ("Goodyear") with respect to all claims and rights relevant to this appeal and the underlying Bankruptcy Court motion ("Veyance" or the "Appellant"),[2] files this Opening Brief in support of its appeal from the Memorandum Decision Denying Request to File Late 503(b)(9) Claim (the "Memorandum Decision") entered on May 30, 2007, by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

## STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1), which provides that "district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees" of bankruptcy judges.  The decision appealed from herein was the Memorandum Decision of the Bankruptcy Court in a contested matter raised by motion pursuant to Rule 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") as part of the Debtors' bankruptcy cases.  In that contested matter, the Appellant sought an order enlarging time pursuant to Rule 9006(b) of the Bankruptcy Rules to deem as timely filed its Section 503(b)(9) prepetition administrative expense claims, which were filed on March 29, 2007 (the "Section 503(b)(9) Claims"), notwithstanding the earlier expiration of a general bar date applicable to all prepetition claims.

---

[1]  On July 31, 2007, The Goodyear Tire & Rubber Company ("Goodyear") completed a corporate transaction in which substantially all of the assets of its Engineered Products Division were sold to Veyance Technologies, Inc., an independent entity.  Goodyear's claims that gave rise to the underlying Bankruptcy Court motion and this appeal were transferred to Veyance as part of the transaction and Veyance appears herein as Goodyear's assignee.  A motion to substitute Veyance for Goodyear as Appellant in this appeal is being filed herewith.

[2]  For convenience and to minimize confusion, the term "Appellant" will be used in this Brief to describe both Goodyear prior to July 31, 2007, and Veyance as Goodyear's assignee after that date.

1

**ISSUES PRESENTED**

A.  Did the Bankruptcy Court err by applying the wrong standard to Appellant's attempt to rebut the presumption of delivery of the claims bar date notice and by concluding that Appellant should be presumed to have received the bar date notice, notwithstanding the evidence presented by Appellant?

B.  Did the Bankruptcy Court err by improperly disregarding Appellant's uncontested evidence rebutting the presumption of delivery of the claims bar date notice without conducting an evidentiary hearing?

C.  Did the Bankruptcy Court err by concluding that the reasons for Appellant's delay in filing the Section 503(b)(9) Claims did not warrant a finding of excusable neglect?

D.  Did the Bankruptcy Court err by finding that the Debtor would be prejudiced by an enlargement of time for Appellant to file its Section 503(b)(9) Claims?

E.  Did the Bankruptcy Court err by finding that the length of Appellant's delay in filing its Section 503(b)(9) Claim was too long to warrant a finding of excusable neglect?

**STANDARD OF REVIEW**

When sitting as a court of appellate review for decisions of a bankruptcy court pursuant to 28 U.S.C. §158(a), a district court reviews factual findings of the bankruptcy court under the "clearly erroneous" standard. Fed R. Bankr. P. 8013. Questions of law and mixed questions of law and fact are reviewed de novo. *In re U.S. Lines, Inc.,* 197 F.3d 631, 138 (2d Cir.1999); *In re AroChem Corp.,* 176 F.3d 610, 620 (2d Cir.1999); *In re Corso,* 328 B.R. 375 (Bankr. E.D.N.Y. 2005). District courts review bankruptcy courts' decisions regarding the existence of excusable neglect under an abuse of discretion standard. *In re Enron Corp.,* 364 B.R. 482 (S.D.N.Y. 2007). To find an abuse of discretion, the Court must be persuaded that the bankruptcy court "acted in an arbitrary and irrational fashion," *Tesser v. Bd. of Educ.,* 370 F.3d 314, 318 (2d Cir. 2004)(internal quotation marks omitted), either because it erred as a matter of law or reached a clearly erroneous finding of fact, or because its judgment "cannot be located within the range of

2

permissible decisions." *Mony Group, Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138, 143-44 (2d Cir. 2004)(internal quotation marks omitted).

## STATEMENT OF THE CASE

A.    Preliminary Statement

The Appellant sought an order from the Bankruptcy Court enlarging the time, pursuant to Rule 9006(b) of the Bankruptcy Rules, to file its Section 503(b)(9) Claims for the sale of goods delivered to Debtor Dana Corporation and/or its affiliated debtor corporations (collectively, the "Debtors") during the twenty-day period immediately proceeding the Debtors' bankruptcy filing on March 3, 2006 (the "Petition Date") despite the expiration of a bar date on September 21, 2006 ("Bar Date"). The Bar Date applied to all prepetition claims, including a new category of prepetition administrative expense claims provided for by Bankruptcy Code Section 503(b)(9), which became effective on October 17, 2005, pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). *See* 11 U.S.C. §503(b)(9). Before BAPCPA, administrative expense claims, which hold the highest priority among any unsecured claims in a bankruptcy case, were limited to claims arising against a debtor's estate after the bankruptcy filing. BAPCPA elevated certain prepetition claims -- specifically, claims of vendors for goods delivered within the 20 days before the bankruptcy filing -- to the same level as postpetition claims.

The Appellant did not receive notice of the Bar Date, notwithstanding the indications to the contrary in the Debtor's certificate of service, which attests to service of the bar date notice on thousands of creditors. Appellant provided specific evidence to rebut the legal presumption that it had received such notice. The Appellant was also caught off guard by the new statute, not expecting a bar date that would be applicable to administrative expense claims. Moreover,

3

Appellant had already filed its general unsecured claims and, therefore, did not expect a general claims bar date to affect its rights.  Because the Debtor had not yet proposed a plan of reorganization and because Appellant's Section 503(b)(9) Claims of approximately $1.4 million are dwarfed by the size of this case involving scheduled assets of $4 *billion* and claims of $3 *billion*, the Debtor would not be prejudiced if the Appellant's Section 503(b)(9) Claims were allowed.

The Bankruptcy Court denied Appellant's Motion.  Notwithstanding the evidence that Appellant submitted demonstrating that it had procedures in place for handling notices in bankruptcy cases, and that it had maintained business records documenting the notices received in the Debtors' bankruptcy case and that those records showed that no bar date notice had *ever been received* from the Debtors (whether timely or not), the Court rejected Appellant's attempt to rebut the legal presumption.  In doing so, the Bankruptcy Court applied the incorrect legal standard.  Even if the Bankruptcy Court's Memorandum Decision can be construed as using the correct standard, it improperly weighed or simply dismissed the testimony in Appellant's declarations without a full evidentiary hearing.  The Bankruptcy Court also concluded, without any supporting evidence, that the Debtor would be prejudiced by the relief sought in the Motion and that Appellant's delay in filing its claims was too long.

On appeal, Appellant urges this Court to reverse the Bankruptcy Court's Memorandum Decision.  Under the appropriate standard, Appellant's evidence was at least sufficient to rebut the presumption that it had received notice created by the Debtors' computer-generated certificate of service.  Alternatively, to the extent the Court applied the correct legal standard, but questioned the veracity or accuracy of Appellant's evidence, it erred by doing so without an evidentiary hearing necessary to weigh the evidence properly.

4

In addition, despite the fact that the length of the delay and prejudice factors regarding excusable neglect motions typically favor the moving party, the Bankruptcy Court concluded in cursory fashion that the delay was too long and that the Debtor would be prejudiced by the relief sought in the Motion. These conclusions are at odds with the evidence in the record and the circumstances of Debtors' bankruptcy cases.

Appellant respectfully requests the District Court to reverse the Memorandum Decision of the Bankruptcy Court.

B.    Procedural History

On March 3, 2006, the Debtors filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York. On July 19, 2006, the Debtors obtained an order establishing September 21, 2006, as the Bar Date applicable to all claims arising before the Debtors' petition date. The Appellant did not receive notice of the Bar Date.

After learning about the Bar Date through a routine review of the docket in the Debtors' bankruptcy cases, on March 29, 2007, the Appellant filed its Section 503(b)(9) claims and, on April 13, 2007, filed a motion under Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Motion") seeking leave to have these claims deemed timely filed on grounds of excusable neglect. After a May 23, 2007 non-evidentiary hearing on Appellant's Motion, the Bankruptcy Court denied the Motion in its Memorandum Decision dated May 30, 2007. The Bankruptcy Court found that the Appellant had not rebutted the legal presumption that it had received a notice, that it was "incredulous" that none of the Debtors' notices mentioned in the Debtors' certificate of service were received by Appellant, notwithstanding the uncontested evidence to

5

the contrary, that the Debtors would be prejudiced if the Section 503(b)(9) Claims were allowed as timely, and that Appellant's delay in filing was too long.

On June 11, 2007, Appellant filed its Notice of Appeal. On July 31, 2007, as part of a major corporate transaction, Goodyear sold substantially all of the assets of its Engineered Products Division to Veyance Technologies, Inc. That sale included the business unit that does business with the Debtors, the claim at issue, and the rights to the Motion and this Appeal. Therefore, Veyance appears as assignee of The Goodyear Tire & Rubber Company seeking reversal of the Bankruptcy Court's May 30, 2007 Memorandum Decision. A motion to substitute Veyance for Goodyear as Appellant is being filed herewith.

C.    Statement of Facts

Appellant is one of the Debtors' major vendors of automotive hoses for braking, transmission, and air conditioning systems. As of the Petition Date, Appellant was owed more than $3.2 million by the Debtors collectively, slightly more than the amount the Debtors' schedules reported as owing to Appellant. Of the total claims, slightly more than half was attributable to goods Appellant believed had been delivered to Debtors before Friday, February 10, 2006 (i.e., the last business day twenty days prior to the Petition Date) (the "Unsecured Claim"), while the remainder of Appellant's claims pertained to goods delivered during the twenty-day period immediately preceding the Petition Date (the "Section 503(b)(9) Claims").

On March 8, 2006, Appellant made a reclamation demand of $2,789,413.11, pursuant to 11 U.S.C. § 546(c), on account of goods delivered during the forty-five days immediately prior to the Petition Date. In this demand, Appellant sought to preserve its rights under the U.C.C. and Bankruptcy Code to an administrative expense claim for recently-delivered goods that remained

in Debtor's possession on the date of the demand. This put the Debtors on notice of Appellant's claims arising from delivery of goods immediately prior to the Petition Date.[3]

On June 28, 2006, Appellant entered into an essential supplier agreement with the Debtors pursuant to the Bankruptcy Court's order dated March 3, 2006, authorizing such agreements. In the Appellant's essential supplier agreement with the Debtors, Appellant expressly reserved its Section 503(b)(9) Claims and the parties recited the fact that such claims existed. Declaration of Benjamin J. Schlater ("Schlater Declaration") at ¶¶ 2-4 and Exhibit A thereto (filed under seal).[4]

On June 30, 2006, Appellant filed a proof of claim on account of its Unsecured Claim.[5] That proof of claim specified that Appellant's address for service in this case was its Law Department at its corporate headquarters. Appellant reasonably expected that its Section 503(b)(9) Claims would be administered in the same fashion as postpetition administrative expense claims, which are not included with general proofs of claim on the official bankruptcy proof of claim form. Administrative expense claims are usually accounted for separately by the debtor in possession as current expenses. Notably, in some bankruptcy cases, at a later date, a process is established for filing administrative expense claims on specifically designated forms.

On July 5, 2006, shortly after Appellant filed its unsecured proofs of claim, and without Appellant's actual knowledge, the Debtors filed a motion seeking an order setting a general bar

---

[3] Appellant later decided not to pursue the reconciliation process for reclamation claims primarily because of the priority given to Appellant's Section 503(b)(9) Claim under the BAPCPA amendments to the Bankruptcy Code and the existence of complex and fact intensive defenses to reclamation claims.

[4] The Schlater Declaration in Support of the Motion was filed with the Bankruptcy Court under seal, pursuant to Court Order. This sealed document has been designated as part of the record on appeal.

[5] Appellant filed identical proofs of claim against both Debtor Dana Corporation and Debtor Coupled Products on June 30, 2006, because it was unclear which debtor entity was responsible for specific invoices that were outstanding and owed to Appellant. Reconciliation of those duplicate claims remains ongoing. For the same reason, the Section 503(b)(9) Claims include identical claims against the same two Debtors.

date for all prepetition claims. The order granting that motion was entered on July 19, 2006 (the "Bar Date Order"), establishing the Bar Date for all prepetition claims. Although it did not mention Section 503(b)(9) claims or administrative expense claims in its title, the Bar Date Order applied to all prepetition claims, including the new class of prepetition administrative expense claims created by BAPCPA and codified in Section 503(b)(9).

The Debtors' notice of the Bar Date was purportedly served between August 2-8, 2006. According to the certificate of service filed by the Debtors' noticing agent, copies of the notice were mailed to several Appellant addresses, many of them at remote locations not likely to reach the attention of Appellant's attorneys or agents for service of process. However, the Debtors did purport to mail the notice to Appellant's Law Department, the one address that was designated in Appellant's general unsecured proof of claim as the correct address for service to Appellant.

The Debtors presumed good intentions notwithstanding, the notice of the Bar Date was never received by Appellant's Law Department or any other office at its headquarters. As explained to the Bankruptcy Court, Appellant's Law Department maintains an established procedure for tracking the receipt of bankruptcy notices and service of process. Declaration of Bertram Bell (the "Bell Declaration") at ¶2. That procedure includes forwarding all bankruptcy notices to a paralegal responsible for bankruptcy matters. Bell Declaration at ¶3. The Law Department also maintains a detailed log of all notices and summons received, including bankruptcy notices delivered to the bankruptcy and collection paralegal. Bell Declaration at ¶2. That log does not include a listing of a claims bar date notice in the Debtors' cases. Bell Declaration at ¶5. Appellant's bankruptcy paralegal has no recollection of the notice, is confident that she would have recognized the importance of a bar date notice if received, and has confirmed that no bar date notice or order appears in the file she maintains for the Debtors'

8

cases. Declaration of Marlene Petroff ("Petroff Declaration") at ¶¶3-5. Indeed, even after the Bar Date, up to and including the date Appellant filed its Reply Memorandum with the Bankruptcy Court on May 21, 2007, not a single one of the bar date notices the Debtor claims to have mailed arrived at Appellant's Law Department. Petroff Declaration at ¶4.

The Debtors' certificate of service regarding the bar date notice also states that notices were mailed to Appellant's general counsel and chief executive officer. Appellant's evidence demonstrates where notices of this sort were routinely directed and that those offices and their records demonstrate that no bar date notice was received.

Without notice of the Bar Date, and with the expectation that Section 503(b)(9) administrative expense claims would not be barred by an early general bar date order, Appellant did not file its Section 503(b)(9) Claims before the Bar Date. Indeed, it was unaware that any Bar Date has been set or that a modified proof of claim form had been prepared to accommodate such claims. Appellant learned about the Bar Date as a result of a routine review of the docket in the Debtors' case.

Appellant delivered goods worth $1,401,053.85 to the Debtors within three weeks of the Debtors' bankruptcy filing, goods that Congress has determined should be accorded priority as administrative expense claims in bankruptcy cases. Appellant's Section 503(b)(9) Claims should have come as no surprise to the Debtors since they had current trade transactions on their books, had scheduled claims by Appellant that covered most of the actual outstanding balance, referred to the Section 503(b)(9) Claims in the essential supplier agreement between the Debtors and Appellant, and received a reclamation notice from Appellant identifying goods delivered during the month and a half prior to the Petition Date, including the 20-day period covered by Section 503(b)(9).

These extraordinary circumstances constitute excusable neglect under Rule 9006(b). Therefore, the Appellant seeks entry of an order reversing the Bankruptcy Court's Memorandum Decision and directing the Bankruptcy Court to enlarge the time for Appellant to file its Section 503(b)(9) Claims and have those claims be deemed timely filed notwithstanding the expiration of the Bar Date.

        D.      <u>Legal Framework of Appellant's Bankruptcy Court Motion</u>

Before addressing Appellant's issues on appeal from the Bankruptcy Court's Memorandum Decision, it may be of assistance to the Court to review briefly the grounds for enlargement of time under Rule 9006(b) and the excusable neglect standard.

Courts have consistently held that allowance of late-filed claims, whether administrative expense claims or general unsecured claims, is considered under the rubric of excusable neglect and Rule 9006(b)'s provision governing enlargement of time. *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 382-83 (1993). In *Pioneer,* the United States Supreme Court resolved a circuit split and adopted a "more flexible" interpretation of the excusable neglect standard. *Pioneer* held that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* 388. The Second Circuit has agreed that *Pioneer* "established a more liberal standard for determining whether it had been excusable neglect." *United States v. Hooper*, 43 F.3d 26, 28 (2d Cir. 1994); *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir. 1997). "Thus, although a late filing will ordinarily not be excused by negligence, that possibility is by no means foreclosed." *Canfield* at 250.

The determination of whether a tardy filing may be excused under the excusable neglect standard

> "is at bottom in equitable one, taking into account all of the relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."

*Pioneer*, 507 U.S. at 395. In the Second Circuit, however, the four

> "Pioneer factors are not accorded equal weight. Typically, the length of the delay, the danger of prejudice, and the movant's good faith usually weigh in favor of the parties seeking the extension. Consequently, the Second Circuit, as well as other Circuits, focus on the third factor, the reason for the delay as the predominant factor."

*Musicland*, 356 B.R. 607 (citations omitted); *see also In re Enron*, 419 F.3d 122.

The Bankruptcy Court did not dispute that Appellant acted in good faith. However, it held that Appellant's reason for delay was in adequate because it was presumed to have received the bar date notice and the circumstances of the new statute did not warrant excusable neglect. The Bankruptcy Court also found that the Debtor would be prejudiced and that the delay was too long. These findings are the subject of this appeal.

## ARGUMENT

A.    **The Bankruptcy Court Erred by Applying the Wrong Standard to Appellant's Attempt To Rebut the Presumption of Delivery of the Claims Bar Date Notice and Concluding that Appellant Should Be Presumed To Have Received the Bar Date Notice, Notwithstanding the Evidence Presented.**

Central to this appeal is the virtually impossible standard the Bankruptcy Court applied to the question of whether Appellant successfully rebutted the presumption of delivery of the bar date notices the Debtor alleges it mailed to the Appellant.

The Bankruptcy Court correctly observed that while the presumption is rebuttable, it is a strong one, and that rebuttal requires specific facts, not mere denials. However, after making these universally-accepted observations, the Bankruptcy Court relied upon opinions that suggest that rebuttal of the presumption must be established by clear and convincing evidence, *In re Bucknum*, 951 F.2d 204, 207 (9th Cir. 1991), and require far more than evidence of reliable business records. The Bankruptcy Court would require "more positive evidence such as testimony of a clerk's office employee that notice was not sent or proof that none of the listed creditors received notice or that the mail was returned unclaimed." *In re Williams*, 185 B.R. 598, 600 (9th Cir. BAP 1995); Memorandum Decision at 9. In the Appellant's case, the Court concluded that it had "failed to demonstrate the Bar Date Notice was not mailed nor that there was any deficiency in the address or mailing process."

The standard employed by the Court improperly turns a rebuttable presumption into an irrebuttable one. "The presumption of receipt, however, is a rebuttable and not a conclusive presumption. . . . The weight accorded presumptions and the rebuttal thereof are governed by Rule 301 of the Federal Rules of Evidence (FRE)." *In re Dodd*, 82 B.R. 924, 928 (N.D. Ill. 1987). FRE 301 provides as follows:

> [A] presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

Fed. R. Evid. 301 (quoted by *Dodd*). Under this rule, the party rebutting the legal presumption is not required to prove the non-existence of the presumed fact, but rather need only introduce evidence that would support a finding of the non-existence of the presumed fact. *Dodd* at 928-929; 1 J. Weinstein & M.A. Berger, *Weinstein's Federal Evidence* § 301.02[3][c] (2d ed. 2007). In other words, for Appellant to rebut the presumption of receipt of the bar date notice, it does

12

not have to conclusively prove that it was not received, but instead need only introduce competent evidence that is probative of the lack of Appellant's receipt. Appellant met this burden. The Bankruptcy Court, however, raised the bar far above where the law requires it to be.

In *Dodd*,[6] the creditor who successfully sought to rebut the presumption of delivery of a bankruptcy notice introduced testimony regarding its internal handling of bankruptcy notices, how such notices were routinely forwarded to its legal department, and that records were kept to record all such notices that were received. After a search of those business records, no record of the notice at issue was found. Based on this evidence, the district court in *Dodd* found, as a matter of law, that the bankruptcy court in that case had erred by not deeming the presumption of receipt to have been rebutted. *Dodd* at 929. A similar conclusion, based on evidence of a company's standard procedures for receiving and recording notices and the lack of a record of the relevant notice, was reached in *In re Cassell*, 206 B.R. 853, 857 (Bankr. W.D. Va. 1997). *Cf. In re Enron Corp.*, 2003 W.L. 21756785 at *6 (Bankr. S.D.N.Y. July 30, 2006) (observing that the creditor would have rebutted the presumption of receipt of the bar date notice if it had "offered evidence that it had and followed a particular internal procedure for recording receipt of mail such as the Bar Date Notice and its records reflect that it did receive the notice").

Appellant's evidence was similar to that presented in *Dodd* and *Cassell* (and that would have made a difference in *Enron*). Appellant filed unsecured proofs of claims designating its Law Department at its headquarters as the proper address for service. As demonstrated by the Appellant's declarations in support of the Motion, all bankruptcy notices received by Appellant's

---

[6] *Dodd* concerned a chapter 13 case and a claim filed pursuant to Rule 3002(c). Because Rule 9006(b)(3) specifically precludes the enlargement of time to file claims on grounds of excusable neglect in chapter 7 and 13 cases, unlike chapter 11 cases, *Dodd* did not technically make a finding of excusable neglect for purposes of enlargement of time under Rule 9006. However, *Dodd* held that due process required notice of a bankruptcy case and of the deadline to file a claim, and therefore reached the issue of notice to the creditor and the presumption of receipt of the notice based on the certificate of service.

13

Law Department are logged into a business record maintained in the ordinary course of the

business to record their receipt. All bankruptcy notices are then directed to a single paralegal

whose job includes overseeing the preparation of bankruptcy claims and monitoring of bar dates.

The business records that Appellant's Law Department maintains at that address reflect that the

Debtors' bar date notice was never received by Appellant. This conclusion has been confirmed

by the only paralegal in Appellant's Law Department assigned to handle bankruptcy notices.

As in *Dodd*, this evidentiary showing meets the threshold necessary under FRE 301 to

rebut the legal presumption of legal receipt premised on the Debtors' certificate of service.

However, Appellant also offered more. Other officers and representatives of Appellant received

notices earlier in the Debtors' case because Appellant had been solicited by the United States

Trustee for potential membership on the official committee of unsecured creditors. Perhaps as a

result of that history, Debtors claim to have mailed the bar date motion to Appellant at more than

a dozen different addresses. Those avenues were not the authorized means for giving notice to

Appellant after Appellant designated its Law Department as the address for service in its

unsecured proof of claim. Nevertheless, it is both interesting and relevant that none of the other

notices Debtor certified as having been mailed to other Appellant addresses have ever been

received by Appellant's Law Department. Indeed, not a single bar date notice has been

forwarded to Appellant's law department from any corner of the Appellant, late or otherwise.

Combined with the business record evidence that the notice was not received by the Law

Department, the failure of any notice to be received by the one employee of the Appellants

responsible for bankruptcy matters creates an inference that an inadvertent error may have been

made by the Debtors' noticing agent.

14

A creditor in the Appellant's position should not be denied its claim because it cannot prove a negative. To impose such a burden would turn a rebuttable presumption into an irrebuttable one, in violation of Rule 301 of the Federal Rules of Evidence, all for the sake of administrative convenience.

Under the correct legal standard, the Debtors' legal presumption of notice to Appellant should be deemed rebutted as a matter of law and Debtor must be required to meet its own burden to prove that it actually gave due notice to Appellant of the bar date. Having met the burden necessary to rebut the presumption of receipt created by the Debtors' certificates of service, the Appellant is entitled to have the burden of persuasion on the question of notice to Appellant revert to the Debtor. "Once [the] burden [of rebutting the legal presumption] is met, the presumption disappears from the case." *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 288 (3d Cir. 2006), citing J. Weinstein & M.A. Berger, *Weinstein's Evidence* § 301.02[2] (2d ed. 2004); *see also In re Yoder Co.*, 758 F.2d 1114, 1119 (6th Cir. 1985) ("a presumption vanishes entirely once rebutted, and the question must be decided as any ordinary question of fact"). Having failed to offer any additional evidence (other than its voluminous certificate of service) that it delivered the bar date notice to Appellant at the proper address, the Debtor must bear the consequences of nonpersuasion and the Court should conclude that Appellant did not receive the notice to which it was entitled.

**B.    The Bankruptcy Court Erred by Improperly Disregarding Appellant's Uncontested Evidence Rebutting the Presumption of Delivery of the Claims Bar Date Notice Without Conducting an Evidentiary Hearing.**

As argued above, the Bankruptcy Court applied the wrong standard for rebutting the presumption of service, one that set too high a threshold for rebuttal and was inconsistent with law. However, to the extent the Bankruptcy Court's Memorandum Decision can be construed has having applied the correct standard, its decision rested on a factual conclusion inconsistent

15

with the only evidence presented.  If a genuine issue of material fact existed with respect to

Appellant's receipt of the bar date notice and the rebuttal of the presumption, then the

Bankruptcy Court abused its discretion by failing to conduct an evidentiary hearing on the issue.

 Regardless of whether a disputed issue comes before a bankruptcy court in the form of a

contested matter or an adversary proceeding, testimony regarding material factual disputes must

be taken in the same manner.  See *In re Khachikyan*, 335 B.R. 121, 125-26 (9th Cir. BAP 2005);

*see also* Fed. R. Bank. P. 9014(d); *In re Home Network Builders, Inc.,* 2006 WL 3419791, *4

(D.N.J. 2006)  ("[p]ursuant to Bankruptcy Rule 9014(d), when a witness can provide testimony

regarding a disputed factual issue that is material to the Court's determination, the presiding

judge must take this testimony in open court").  Rule 9014(d) provides:

> (d) Testimony of witnesses.  Testimony of witnesses with respect to
> disputed material factual issues shall be taken in the same manner as
> testimony in an adversary proceeding.

Fed. R. Bank. P. 9014(d).  The advisory committee's note to Rule 9014 makes clear that this

requirement is intended to require a trial when there is a genuine factual dispute.[7]

 The heart of Appellant's argument is that it did not receive the bar date notice.  In

support, Appellant submitted declarations providing specific evidence of Appellant's internal

procedures for recording receipt of bankruptcy notices and that such records demonstrate that the

bar date notice in these cases was never received by Appellant.  The Debtor relied solely upon its

---

[7] Specifically, the committee notes state that:

Subdivision (d) is added to clarify that if the motion cannot be decided without resolving a disputed material issue of fact, an evidentiary hearing must be held at which testimony of witnesses is taken in the same manner as testimony is taken in an adversary proceeding or at a trial in a district court civil case.  Rule 43(a), rather than Rule 43(e), F.R. Civ. P., would govern the evidentiary hearing on the factual dispute.  Under Rule 9017, the Federal Rules of Evidence also apply in a contested matter.  Nothing in the rule prohibits a court from resolving any matter that is submitted on affidavits by agreement of the parties.

Note of Advisory Committee to Rule 9014, Fed. R. Bank. P. 9014.

filed certificate of service to refute Appellant's assertions, essentially resting on the legal

presumption. If the core fact at issue here – whether Appellant received the bar date notice -- is

disputed, Rule 9014(d) would mandate that the Bankruptcy Court conduct an evidentiary hearing

to allow the parties to submit testimony so that the Bankruptcy Court would have a proper

evidentiary foundation from which to make its findings of fact. If there is no genuine issue of

disputed fact – because the only direct evidence regarding the delivery of the bar date notice was

Appellant's testimony disproving it – then the Court should rule in the Appellant's favor as a

matter of law.

In its Memorandum Decision, the Bankruptcy Court made a factual finding regarding

Appellant's receipt of the bar date notice. See Memorandum Opinion at 10 ("I find it

incredulous that of 21 Bar Date Notices mailed. . . . [Appellant] failed to receive even one.").

Based upon this factual finding, the Bankruptcy Court ruled that Appellant had not overcome the

presumption that it had received notice. In doing so, the Bankruptcy Court committed reversible

error because it did not provide Appellant with the opportunity to present its testimony by live

witnesses or to cross-examine or otherwise question the noticing agent responsible for mailing

the bar date notices on behalf of the Debtors. Simply stated, the Bankruptcy Court made its

ruling without providing Appellant with the opportunity to fully develop its factual foundation or

to fully evaluate and weigh the Appellant's testimony. Accordingly, the Bankruptcy Court's

failure to conduct an evidentiary hearing in this matter is in error.

C.    **The Bankruptcy Court Erred by Concluding that the Reasons for Appellant's Delay in Filing Its Section 503(b)(9) Claims Did Not Warrant a Finding of Excusable Neglect.**

Appellant's delay in filing its Section 503(b)(9) Claims is excusable both because it did

not receive notice of the bar date and because the novelty of the newly-created Section 503(b)(9)

administrative expense claims reasonably caused the Appellant not to anticipate an applicable

17

bar date.  The reason for delay factor for excusable neglect incorporates *Pioneer's* "concern for

sufficient notice. " *In re Au Coton*, 171 B.R. 16, 18 (S.D.N.Y. 1994).  As demonstrated above,

the Bankruptcy Court erred in failing to find that Goodyear successfully rebutted the

presumption of receipt of the bar date notice.  The fact that Appellant did not receive the bar date

notice is alone sufficient to allow the timely filing of Appellant's claim pursuant to Rule

9006(b)'s excusable neglect standard.

In addition, the novelty of Section 503(b)(9) claims and the lack of established

procedures for their administration provide an independent and sufficient reason for the delay in

this case, supporting a finding of excusable neglect.  In its Memorandum Decision, the

Bankruptcy Court dismissed this argument due to the fact that the bar date notice provided

procedures for filing Section 503(b)(9) proofs of claim.  Of course, the Court's logic does not

take into account the fact that Appellant did not receive the bar date notice and, therefore, was

unaware of the Court's administrative procedures for these new prepetition administrative

expense claims.

Moreover, the Court overlooked the fact that in *Pioneer* the Supreme Court concluded

that excusable neglect can exist even when the creditor does receive notice.  This was so because

the bar date notice in *Pioneer* was not conspicuous and was contained in a document that did not

normally include bar date notices.  *Pioneer*, 507 U.S. at 398-99.  In *Pioneer*, the creditor seeking

enlargement of time admitted receiving a notice of the meeting of creditors that included, in fine

print, reference to a bar date.  *Id.* at 383-84.  *Pioneer* observed that inclusion of a bar date in a

notice of the first meeting of creditors in a chapter 11 case was unusual.  Moreover, in the

particular notice at issue, the bar date reference was not conspicuous.  *Id.* at 386-87.  On these

18

facts, *Pioneer* found an adequate reason for delay justifying a finding of excusable neglect. *Id.* at 388-89.

Pioneer's holding is applicable here. In this case, the new statute created a hybrid claim that both arose prepetition and was given administrative expense (i.e. postpetition) priority. The Appellant had filed all of its general unsecured claims and expected that its administrative claim would not be affected by any general bar date order. Administrative expense claims have always been, and continue to be, governed by Section 503(a), which provides for request for payment of administrative claims "after notice and a hearing," a procedure at odds with the conventional procedure for filing proofs of claim and waiting for claim objections. Therefore, even if the bar date order was received by Appellant (which it was not), Appellant's circumstances in this case -- having already filed its general claims -- may have caused a general bar date notice without conspicuous reference to Section 503(b)(9) administrative claims to be easily overlooked. Indeed, the Debtor's bar date notice did not conspicuously give notice that Section 503(b)(9) Claims would be barred.[8] As in *Pioneer*, an inadequate notice constitutes excusable neglect.

The Bankruptcy Court further erred by finding that Appellant's reason for delay was insufficient due to Appellant's failure to check the docket for notice of the bar date. Creditors in a Chapter 11 bankruptcy proceeding do not have a duty to continuously check the bankruptcy docket for notification of the bar date and administrative filing instructions. In its Memorandum Decision, the Bankruptcy Court cites *In re Wechsler* for the proposition that Appellant's reason for delay is not excusable because of Goodyear's failure to satisfy its affirmative responsibility to check the docket. *In re Wechsler*, 246 B.R. 490 (S.D.N.Y. 2000). In *Wechsler*, both parties to

---

[8]  The Bar Date notice was not ambiguous. Its fine print was carefully drafted by Debtor's counsel to include the new class of administrative expense claims, while excluding all other administrative expense claims. However, since this distinction was new, the applicability of the bar date to Section 503(b)(9) claims should have been made more conspicuous.

the proceeding were participants in a hearing where the judge made a ruling from the bench and ordered a proposed order be prepared to reflect the judge's ruling. The order was submitted to the Court and entered into promptly thereafter. In deciding whether to grant a enlargement of time for the movant to appeal the order based upon a finding of excusable neglect, the Court found that excusable neglect was not demonstrated because the movant was present in court for the bench ruling, received a proposed order, was aware of the date on which the order would be submitted to the Court, and ultimately failed to check the docket to determine if the order had been entered. *Id.* at 495.

*Wechsler* is distinguishable from the instant case. Appellant was not actively involved in any bankruptcy litigation with any party in the Debtors' bankruptcy cases, nor had it any reason to expect an order to be entered on the docket. Appellant was not a party to or the subject of a contested matter or adversary proceeding in these cases. Appellant was merely one of thousands of creditors entitled to notice of any bar date that would affect its claims. The cases that impose a duty on a party to monitor the docket do not apply in a bankruptcy case to a creditor who merely has a scheduled claim. Rule 2002(a)(7) of the Bankruptcy Rule requires notices be mailed to all creditors regarding bar date notices, an expensive process that illustrates the law's sensitivity and concern for fundamental principles of due process and the obligations of chapter 11 debtors in possession to notify its creditors before their claims may be barred.

If the Bankruptcy Court were correct that it was Appellant's duty to inspect the Bankruptcy Court docket for bar date notices, there would be no need for mailing any bar date notices to creditors and there would be no grounds for finding excusable neglect after rebutting the presumption of service in any case. The cases already cited above holding that such relief can be granted in certain circumstances, especially where the presumption of service has been

20

rebutted, demonstrate that creditors are not required to monitor the docket for bar date orders or

notices. As demonstrated herein, the novelty of Section 503(b)(9) claims under the new statute

and the uncertainties attendant to them, combined with failure of notice to be delivered to

Goodyear, justifies a finding of excusable neglect.

> **D.    The Bankruptcy Court Erred by Finding that the Debtors Would Be
> Prejudiced by An Enlargement of Time For Appellant to File its Section
> 503(b)(9) Claims.**

The Bankruptcy Court found that allowing Appellant's Section 503(b)(9) Claims would

prejudice the Debtors because it is "substantial" and the possibility that other untimely creditors

would also seek allowance.

The Bankruptcy Court erred by finding that there would be prejudice to the Debtors

merely because Goodyear's claim would dilute the recovery of other creditors. Goodyear is not

seeking special treatment or immediate payment which would result in an inequitable

impairment to timely filed creditors, only the equitable treatment Goodyear would receive if it

had received the bar date notice and timely filed. Allowing legitimate claims inherently involves

a dilutive effect on the claims of other creditors. This does not represent prejudice, but instead

justice and equity. The "depletion of assets otherwise available for timely filed claims" does not

constitute prejudice. *In re R.H. Macy & Co.*, 166 B.R. 799, 802 (S.D.N.Y. 1994); *see also In re*

*O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 128 (3d Cir. 1999) (loss of windfall does not

constitute prejudice); *In re Papp International, Inc.*, 189 B.R. 939 (Bankr. D. Neb. 1995)

(requiring the debtor to deal with a large tardy claim does not constitute prejudice). The fact that

Goodyear seeks an enlargement of time to file an administrative priority claim, which in the

Court's eyes is a substantial claim, is not enough for a finding of prejudice to the Debtors.

With respect to the possibility of encouraging other late claims, the Bankruptcy Court

concluded that the "floodgate argument is a viable one." Memorandum Decision at 12. The

Bankruptcy Court reached this conclusion without taking into consideration the highly unusual facts which are extremely unlikely to be replicated in the instance case.

The facts in the instant case are dissimilar from the multitude of the other 800 claims which were filed after the bar date. Appellant's circumstances diverge from most other late filed claimants because Appellant, as a creditor, did not receive notice of the bar date.[9] For the reasons set forth above, Appellant has rebutted the presumption of receipt of the bar date notice with specific evidence that it did not receive the notice, a standard that very few creditors are able to meet. Moreover, Appellant's situation was compounded by the uncertainties surrounding the newly enacted Section 503(b)(9) Claims, whose novelty will quickly disappear as courts and creditors gain experience and establish procedures for their proper administration, thus depleting the opportunity for a flood of new claims. Finally, Appellant negotiated an essential supplier agreement with the Debtors in this case that specifically acknowledged Appellant's Section 503(b)(9) Claims, and also gave Debtors notice of its reclamation claim, which included goods delivered during the twenty days immediately preceding the bankruptcy filing.

Taken together, these factors distinguish Appellant's situation from most, if not all other creditors. Appellant seeks extraordinary relief under extraordinary facts that are supported by specific evidence. The Bankruptcy Court's assertion that the allowance of Appellant's claim would cause the floodgates to open is, therefore, as unwarranted as it is speculative.

Finally, the Bankruptcy Court erred by failing to take into account the factors relevant to the issue of prejudice in the excusable neglect context. Courts have routinely considered: "(1) the size of the late claim in relation to the estate, (2) whether a disclosure statement or plan [of reorganization] has been filed or confirmed with knowledge of the existence of the claim, and (3)

---

[9]  In fact, Goodyear was not merely a known creditor; it had already filed a proof of claim (on account of its general unsecured claim) giving the Debtors notice of the exact address to which any future notices should be sent.

22

the disruptive affect that the late filing would have on a plan close to completion or upon the

economic model upon which the plan was formulated and negotiated" in their determination of

whether a finding of excusable neglect would prejudice the debtor. *In re Enron Corp.*, 298 B.R.

513, 525 (Bankr. S.D.N.Y. 2003); *In re Enron Corp.*, 2003 W.L. 21756785 at *5 (Bankr.

S.D.N.Y. July 30, 2003); *In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995). Courts

also consider whether the debtor had knowledge of the claim or was caught unaware by the late

filing. *In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 127-28 (3d Cir. 1999).

If adequate consideration was given to these factors the Bankruptcy Court would have

found that the enlargement pursuant to Rule 9006(b) would not prejudice the Debtors. Although

Appellant's Section 503(b)(9) Claim totals approximately $1.4 million, it is dwarfed by the size

of these cases. The Debtors' scheduled assets total approximately $4 billion and the scheduled

claims against its estates total approximately $3 billion. In fact, the Debtors' claims register

currently reports total claims of approximately $6 billion. Therefore, the allowance of

Appellant's Section 503(b)(9) Claim will not disrupt the reorganization of the Debtors or

prejudice its other creditors in any legitimate way or to any material extent.

> **E.     The Bankruptcy Court Erred by Finding that the Length of Appellant's Delay in Filing Its Section 503(b)(9) Claim Was Too Long To Warrant A Finding Of Excusable Neglect.**

The Second Circuit has held that "the lateness of a claim must be considered in the

context of the proceeding as a whole." *In re Enron Corp.*, 419 F.3d 115 (2nd Cir. 2005). The

six month delay in filing Appellant's claim, when considering the context of the Debtors'

bankruptcy proceedings as a whole, will not impair or detrimentally impact the administration of

this bankruptcy case. Courts have found that "in some cases a claim that is six months late will

create substantial prejudice and interference, and in some others it will create none." *In re*

*Enron*, 419 F.3d 115, 128-29 (2d Cir. 2005), *citing Linder v. Trump's Castle Assocs.*, 155 B.R.

23

102, 108 n. 10 (D.N.J. 1993).  In the present case the length of delay does not create substantial

prejudice or interference.

The Bankruptcy Court concluded that the delay was not excusable because it conflicted

with the stringent timelines which facilitate the equitable and orderly intake of claims allowing

the debtors to understand the universe of liabilities of the proceedings.  However, no evidence

presented to the Bankruptcy Court supports this conclusion and, in fact, the evidence submitted

compels the opposite conclusion.  The Debtors were aware that Appellant had a Section

503(b)(9) Claim due to the essential supplier agreement negotiated between Appellant and the

Debtors and Appellant's reclamation demand.  Further, Appellant filed its claim and motion to

enlarge prior to the filing of a plan disclosure statement or distributions being made or even

anticipated.  Moreover, the Debtors did not present any evidence to specifically demonstrate how

the allowance of Appellant's claim will cause a disruption to the administration of the Debtors'

case.

Additionally, when taking into account the reasons for Appellant's delay the length of

delay analysis further weighs in favor of Goodyear.  Unlike the facts in *In re Enron Corp.*, where

a six month delay was held to be too long, Goodyear did not receive notice of the Bar Date and

did not learn about it until months after the Bar Date had expired.  A six month delay caused by

the fact that the bar date notice was never received should be viewed in a different light than a

case where a creditor merely slept on its rights.  In fact, courts have held that much longer delays

did not prevent relief, particularly in cases where lack of notice was an issue.  *See In re Thomson*

*McKinnon Securities, Inc.*, 159 B.R. 146, 148 (Bankr. S.D.N.Y. 1993) (creditors allowed claim

filed two years after deadline where it had not received notice); *In re Papp International, Inc.*,

189 B.R. 939, 946 (Bankr. D. Neb. 1995) (IRS allowed claim filed two years after deadline

24

where it had received ambiguous notice).  Accordingly, the Bankruptcy Court erred by finding

that the length of delay in this case prevented a finding of excusable neglect.

## CONCLUSION

For the reasons set forth herein, the Appellant respectfully requests that the District Court

reverse the Memorandum Decision of the Bankruptcy Court.

DATED:  August 31, 2007                     Respectfully submitted,

/s/ Alan M. Koschik
BROUSE McDOWELL L.P.A.
1001 Lakeside Avenue, Suite 1600
Cleveland, Ohio 44114
Telephone:  (216) 830-6830
Facsimile:  (216) 830-6807
Marc B. Merklin  (MM8195)
Alan M. Koschik  (AK5891)
Email:  mmerklin@brouse.com
Email:  akoschik@brouse.com

and


HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY  10016
Telephone:  (212) 592-1400
Facsimile:  (212) 592-1500
Joshua J. Angel (JA-3288)
Paul Rubin (PR-2097)


Attorneys for Appellant,
Veyance Technologies, Inc.

25