PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, NY 10017-2024
Telephone: 212.561.7700
Facsimile: 212.561.7777
Dean A. Ziehl (DZ-6154)
Robert J. Feinstein (RF-2836)
Debra I. Grassgreen (CA Bar No. 169978)
Robert M. Saunders (RS-9999)
Beth E. Levine (BL-6715)
Conflicts Counsel for Appellee DANA CORPORATION, et al.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No. 06-10354 (BRL) |
| | : | (Jointly Administered) |
| Dana Corporation, *et al.* , | : | |
| | : | |
| Debtors | : | |
| | : | |
| VEYANCE TECHNOLOGIES, INC., | : | Case No. 07-CV-06169 (DAB) |
| | : | |
| Appellant, | : | (Bankruptcy Appeal) |
| | : | |
| vs. | : | Judge Deborah A. Batts |
| | : | |
| DANA CORPORATION, *et al.,* | : | |
| | : | |
| Appellee. | : | |
| | : | |
| | : | |
| | : | |

PACHULSKI STANG ZIEHL & JONES LLP
Dean A. Ziehl (DZ-6154)
Robert Feinstein (RF-2836)
Debra Grassgreen (CA Bar No. 169978)
Robert Saunders (RS-9999)
Beth E. Levine (BL-6715)
780 Third Avenue, 36th Floor
New York, NY 10017-2024
Telephone: 212.561.7700
Facsimile: 212.561.7777

Conflicts Counsel for Appellee
DANA CORPORATION, et al.

# TABLE OF CONTENTS

**Page No.**

STATEMENT OF APPELLATE JURISDICTION ................................................................ 2

ISSUES PRESENTED.............................................................................................................. 2

STANDARD OF REVIEW ....................................................................................................... 3

STATEMENT OF THE CASE.................................................................................................. 3

      Preliminary Statement................................................................................................ 3

      Procedural History ..................................................................................................... 4

      Statement of Facts...................................................................................................... 5

ARGUMENT ............................................................................................................................. 9

    A.     The Bankruptcy Court Applied the Appropriate Standard to Appellant's Attempt To Rebut the Presumption of Delivery of the Bar Date Notice and Appropriately Concluded that Appellant Should Be Presumed To Have Received the Bar Date Notice............................................................................................................................ 10

    B.     The Bankruptcy Court Considered Goodyear's Evidence Proffered to Rebut the Presumption of Delivery and was not Required to Conduct an Evidentiary Hearing.......................................................................................................................... 16

    C.     The Bankruptcy Court was Correct in Concluding that the Reasons for Appellant's Delay in Filing Its Section 503(b)(9) Claims Did Not Warrant a Finding of Excusable Neglect. ........................................................................................... 21

    D.     The Bankruptcy Court was Correct in Finding that the Debtors Would Be Prejudiced by An Enlargement of Time For Appellant to File its Section 503(b)(9) Claims. ........................................................................................................................ 31

    E.     The Bankruptcy Court was Correct in Finding that the Length of Goodyear's Delay in Filing Its Section 503(b)(9) Claim Was Too Long To Warrant A Finding Of Excusable Neglect. ............................................................................................. 33

CONCLUSION........................................................................................................................ 35

## TABLE OF AUTHORITIES

<u>**Page No.**</u>

**CASES**

*Black v. Diamond,*
  163 Fed.Appx. 58 (2d Cir. Jan. 19, 2006)............................................................................ 11

*Blaise v. Wolinsky (In re Blaise),*
  219 B.R. 946 (2d Cir. BAP 1998)..................................................................................... 18

*Canfield v. Van Atta Buick/GMC Truck, Inc.,*
  127 F.3d 248 (2d Cir. 1997), *cert. denied* 522 U.S. 1117, 108 S.Ct. 1055 (1998).................. 24

*Crysen/Montenay Energy Co. v. Belcher Co. of N.Y.,*
  No. 93 Civ. 339(RPP), 1993 U.S. Dist. LEXIS 12858, 1993 WL 362360
  (S.D.N.Y. September 17, 1993) ......................................................................................... 27

*Dayco Corp. v. Goodyear Tire & Rubber Co.,*
  523 F.2d 389 (6th Cir. 1975) ......................................................................... 12, 18, 20, 28

*Duke v. County of Nassau,*
  63 Fed. Appx. 558 (2d Cir. 2003) ............................................................................... 24, 28

*FCC v. WJR,*
  337 U.S. 265, 69 S.Ct. 1097 (1949)................................................................................... 18

*Federal Savings & Loan Insurance Corp. v. Dixon,*
  835 F.2d 554 (5th Cir. 1987) ............................................................................................ 19

*First Fidelity Bank, N.A. v. Hooker Invs. Inc. (In re Hooker Invs., Inc.),*
  937 F.2d 833 (2d Cir. 1991)............................................................................................. 22

*First Republicbank Dallas v. Gargyle Corp.,*
  91 B.R. 398 (N.D. Tex. 1988)...................................................................................... 18, 19

*Graphic Communications Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc.,*
  270 F.3d 1 (1st Cir. 2001).................................................................................................. 24

*Greene v. WCI Holdings Corp.,*
  136 F.3d 313 (2d Cir.), *cert. denied* 525 U.S. 983 (1998)..................................................... 18

*In re Alexander's, Inc.,*
  176 B.R. 715 (Bankr. S.D.N.Y. 1995).......................................................................... 11, 12

*In re Apex Properties, Ltd.,*
  Civil Action No. 88-0056 (D.N.J., May 6, 1988) ................................................................ 18

*In re Applin,*
  108 B.R. 253 (Bankr. E.D. Cal. 1989)................................................................................ 17

*In re Cedant Prides Litigation,*
  311 F.3d 298 (3d Cir. 2002)............................................................................................... 11

*In re Dana Corp.,*
  Slip Copy, 06-10354 (BRL), 2007 WL 1577763, 48 Bank. Ct. Dec. 80
  (Bankr. S.D.N.Y. May 30, 2007)................................................................................. passim

*In re Delphi Corp.,*
  Case No. 06-CV-863 (LTS), 2006 WL 1470929 (S.D.N.Y. May 30, 2006).............................. 3

*In re Dodd,*
  82 B.R. 924 (N.D. Ill. 1987) ............................................................................................. 16

*In re Drexel Burnham Lambert Group, Inc.*,
148 B.R. 1002 (S.D.N.Y. 1993).................................................................................... 9

*In re Enron Corp.*,
2003 WL 1889042 (Bankr. S.D.N.Y. Apr. 8, 2003)...................................................... 23

*In re Enron Corp.*,
2003 WL 21756785 (Bankr. S.D.N.Y. July 30, 2003) .................................................. 12

*In re Enron Corp.*,
2007 WL 294114 (Bankr. S.D.N.Y. Jan. 31, 2007)................................... 23, 24, 31, 32

*In re Enron Corp.*,
2007 WL 610404 (Bankr. S.D.N.Y. Feb. 23, 2007)................................... 23, 24, 31, 32

*In re Enron Corp.*,
298 B.R. 513 (Bankr. S.D.N.Y. 2003), *aff'd Midland Cogeneration Venture Ltd. v. Enron
Corp (In re Enron Corp.)*, 419 F.3d 115 (2d Cir. 2005)....................................... passim

*In re Gregory*,
705 F.2d 1118 (9th Cir. 1983) ................................................................................... 27

*In re Integrated Resources, Inc.*,
157 B.R. 66 (S.D.N.Y. 1993)......................................................................................... 3

*In re Johns-Manville Corp.*,
2006 WL 1676392 (S.D.N.Y. June 14, 2006), *aff'd* 476 F.3d 118 (2d Cir. 2007)............. 25, 29

*In re Keene*,
188 B.R. 903 (Bankr. S.D.N.Y. 1995)........................................................... 22, 23, 32

*In re Khachikyan*,
335 B.R. 121 (9th Cir. BAP 2005)............................................................................ 17

*In re Manshul Construction Corp.*,
Case No. 97-CV-4295 (DAB), 1998 WL 405039 (S.D.N.Y. July 20, 1998) ............................ 3

*In re Mid-Miami Diagnostics, L.L.P.*,
195 B.R. 20 (Bankr. S.D.N.Y. 1996).......................................................... 11, 12, 22

*In re Musicland Holding Corp.*,
356 B.R. 603 (Bankr. S.D.N.Y. 2006)........................................................................ 22

*In re New York Seven-Up Bottling Co., Inc.*,
153 B.R. 21 (Bankr. S.D.N.Y. 1993).......................................................................... 30

*In re Nutri*Bevco, Inc.*,
117 B.R. 771 (Bankr. S.D.N.Y. 1990)........................................................ 11, 23, 27

*In re R.H. Macy & Co., Inc.*,
161 B.R. 355 (Bankr. S.D.N.Y. 1993)................................................................... 9, 12

*In re Ravick Corp.*,
106 B.R. 834 (Bankr. D.N.J. 1989) ........................................................................... 18

*In re The Drexel Burnham Lambert Group Inc.*,
129 B.R. 22 (Bankr. S.D.N.Y. 1991).......................................................................... 31

*In re Torres*,
15 B.R. 794 (Bankr. E.D.N.Y. 1981)..................................................................... 16, 27

*Lynch v. IRS*,
430 F.3d 600 (2d Cir. 2005)....................................................................................... 23

*McCall v. City of Danbury*,
16 Fed. Appx. 77 (2d Cir. 2001)................................................................................. 18

*North Am. Car Corp. v. Peerless Weighing & Vending Machine Corp.,*
   143 F.2d 938 (2d Cir. 1944)......................................................................... 16
*Pioneer Investment Services Co. v. Brunswick Associates L.P.,*
   507 U.S. 380, 113 S.Ct. 1489 (1993)................................................... passim
*Seinfeld v. Worldcom, Inc.,*
   2007 WL 987867 (S.D.N.Y. Apr. 4, 2007)........................................ 15, 29
*Silivanch v. Celebrity Cruises, Inc.,*
   333 F.3d 355 (2d Cir. 2003), *cert. denied sub nom. Essef Corp. v. Silivanch,*
   540 U.S. 1105, 124 S.Ct. 1047, 157 L.Ed.2d 890 (2004)...................... 24, 25
*Tancredi v. Metropolitan Life Ins. Co.,*
   378 F.3d 220 (2d Cir. 2004).......................................................................... 33
*Trade Creditor Group v. L.J. Hooker Corp., Inc. (In re Hooker Investments, Inc.),*
   188 B.R. 117 (S.D.N.Y. 1995) *aff'd* 104 F.3d 349 (2d Cir. 1996)............ 10
*U.S. ex rel. Grynberg v. Enron Corp. (In re Enron Corp.),*
   364 B.R. 482 (S.D.N.Y. 2007)............................................... 3, 27, 29, 32
*U.S. Lines, Inc. v. U.S. Lines Reorganization Trust,*
   262 B.R. 223 (S.D.N.Y. 2001, *aff'd* 318 F.3d 432 (2d Cir. 2003) ........... 15
*U.S. Trustee v. Andover Togs, Inc. (In re Andover Togs, Inc.),*
   Case Nos. 96-CV-7691 (DAB) and 97-CV 7601 (DAB), 2001 WL 262605
   (S.D.N.Y. Mar. 15, 2001) ............................................................................. 3
*U.S. v. Valley Nat'l Bank (In re Decker),*
   199 B.R. 684 (9th Cir. BAP 1996)............................................................... 17
*Wechsler v. Equitable Life Assurance Society,*
   246 B.R. 490 (S.D.N.Y. 2000)............................................................... 27, 28
*World Brilliance Corp. v. Bethlehem Steel Co.,*
   342 F.2d 362 (2d Cir. 1965).......................................................................... 18

## STATUTES

11 U.S.C. § 1107(a) ...................................................................................... 4, 6
11 U.S.C. § 1108............................................................................................ 4, 6
11 U.S.C. § 502(b)(9)......................................................................................... 22
11 U.S.C. § 503................................................................................................. 30
11 U.S.C. § 503(a) .............................................................................................. 8
11 U.S.C. § 503(b) .............................................................................................. 7
11 U.S.C. § 503(b)(9) ................................................................................ passim
11 U.S.C. § 507................................................................................................. 30
11 U.S.C. § 507(a)(2)....................................................................................... 7, 8
11 U.S.C. § 507(a)(4)....................................................................................... 7, 8
11 U.S.C. § 507(a)(5)....................................................................................... 7, 8
11 U.S.C. § 507(a)(8)....................................................................................... 7, 8
28 U.S.C. § 158(a)(l)........................................................................................... 2

## OTHER AUTHORITIES

*Bankr. Evid. Manual § 301.30* ...................................................................... 10
*The Toledo Blade,* August 3, 2006..................................................................... 9
*The Wall Street,* August 3, 2006 ........................................................................ 9

## RULES

Fed. R. Bankr. P. 1017(d) .............................................................................................. 18
Fed. R. Bankr. P. 2002 ................................................................................................... 11
Fed. R. Bankr. P. 2002(g)(1) ........................................................................................ 11
Fed. R. Bankr. P. 4001(a)(3) ......................................................................................... 18
Fed. R. Bankr. P. 9006 ................................................................................................... 16
Fed. R. Bankr. P. 9006(b) ........................................................................................... 2, 5
Fed. R. Bankr. P. 9013 ..................................................................................................... 2
Fed. R. Bankr. P. 9014 ........................................................................................... 17, 18
Fed. R. Bankr. P. 9017 ............................................................................... 16, 17, 18, 19
Fed. R. Civ. P. 43 .................................................................................................... 16, 17
Fed. R. Civ. P. 43(e) ................................................................................... 17, 18, 19
Fed. R. Civ. P. 44 ........................................................................................................... 16
Fed. R. Civ. P. 44.1 ........................................................................................................ 16
LBR 3 .............................................................................................................................. 17

PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, NY 10017-2024
Telephone: 212.561.7700
Facsimile: 212.561.7777
Dean A. Ziehl (DZ-6154)
Robert J. Feinstein (RF-2836)
Debra I. Grassgreen (CA Bar No. 169978)
Robert M. Saunders (RS-9999)
Beth E. Levine (BL-6715)
Conflicts Counsel for Appellee DANA CORPORATION, et al.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No. 06-10354 (BRL) |
| | : | (Jointly Administered) |
| Dana Corporation, *et al.*, | : | |
| | : | |
| Debtors | : | |
| | : | |
| VEYANCE TECHNOLOGIES, INC., | : | Case No. 07-CV-06169 (DAB) |
| | : | |
| Appellant, | : | (Bankruptcy Appeal) |
| | : | |
| vs. | : | Judge Deborah A. Batts |
| | : | |
| DANA CORPORATION, *et al.*, | : | |
| | : | |
| Appellee. | : | |
| | : | |
| | : | |
| | : | |

### APPELLEE'S OPENING BRIEF

Dana Corporation and the other above-captioned chapter 11 debtors and debtors in possession (collectively, the "Debtors" or "Appellee"), as appellees, hereby file their Opening Brief in opposition to the appeal by Veyance Technologies, Inc ("Veyance" or "Appellant"), as

assignee of The Goodyear Tire & Rubber Company ("Goodyear"),[1] of the *Memorandum Decision Denying Request to File Late 503(b)(9) Claim* (the "Memorandum Decision"),[2] entered on May 30, 2007, by Judge Burton R. Lifland, United States Bankruptcy Judge for the Southern District of New York (the "Bankruptcy Court").

## STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(l).

## ISSUES PRESENTED

In the Appellant's Brief, the Appellant states:

The decision appealed from herein was the Memorandum Decision of the Bankruptcy Court in a contested matter raised by motion pursuant to Rule 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") as part of the Debtors' bankruptcy cases. In that contested matter, the Appellant sought an order enlarging time pursuant to Rule 9006(b) of the Bankruptcy Rules to deem as timely filed its section 503(b)(9) prepetition administrative expense claims, which were filed on March 29, 2007 (the "Section 503(b)(9) Claims"), notwithstanding the earlier expiration of a general bar date applicable to all prepetition claims.

App. Brief, at 1 (underline of defined term added).

The Appellant raises the following issues in its Opening Brief (quoted verbatim):

A.    Did the Bankruptcy Court err by applying the wrong standard to Appellant's attempt to rebut the presumption of delivery of the claims bar date notice and by concluding that Appellant should be presumed to have received the bar date notice, notwithstanding the evidence presented by Appellant?

B.    Did the Bankruptcy Court err by improperly disregarding Appellant's uncontested evidence rebutting the presumption of delivery of the claims bar date notice without conducting an evidentiary hearing?

---

[1] Veyance in its Opening Brief (the "App. Brief") states that on July 31, 2007, Goodyear completed a corporate transaction in which substantially all of the assets of its Engineered Products Division were sold to Veyance. Veyance also states in the Appellant's Brief that it is an "independent entity" from Goodyear. Goodyear's claims that gave rise to the underlying Bankruptcy Court motion and this appeal were purportedly transferred to Veyance as part of the transaction, and Veyance appears herein as Goodyear's assignee. Veyance filed a motion to substitute it for Goodyear as Appellant in this appeal. An Order was entered by this Court on September 13, 2007 granting substitution of parties. (District Court Docket No. 12).

[2] Abbreviated herein for citation purposes as "Mem. Dec."

C.     Did the Bankruptcy Court err by concluding that the reasons for Appellant's delay in filing the Section 503(b)(9) Claims did not warrant a finding of excusable neglect?

D.     Did the Bankruptcy Court err by finding that the Debtor would be prejudiced by an enlargement of time for Appellant to file its Section 503(b)(9) Claims?

E.     Did the Bankruptcy Court err by finding that the length of Appellant's delay in filing its Section 503(b)(9) Claim was too long to warrant a finding of excusable neglect?

## STANDARD OF REVIEW

As the Appellant states in its brief: "District courts review bankruptcy courts' decisions regarding the existence of excusable neglect under an abuse of discretion standard." App. Brief, at 2, citing *U.S. ex rel. Grynberg v. Enron Corp. (In re Enron Corp.)*, 364 B.R. 482, 486 (S.D.N.Y. 2007). The District Court's decision in *Enron* states that when applying the abuse of discretion standard in an excusable neglect case: "The Court is not to consider whether it would have made the same decision, but only whether the decision was reasonable." *Enron*, 364 B.R., at 486. Regarding the findings necessary to reverse a bankruptcy court's decision under the abuse of discretion standard, this Court has stated:

> On appeal, an abuse of discretion may *only* be found where the (1) decision was based on an erroneous conclusion of law; (2) the record contains *no* evidence on which the judge could have based his decision; or (3) supposed facts found are erroneous as found.

*U.S. Trustee v. Andover Togs, Inc. (In re Andover Togs, Inc.)*, Case Nos. 96-CV-7691 (DAB) and 97-CV 7601 (DAB), 2001 WL 262605, at *2 (S.D.N.Y. Mar. 15, 2001) and *In re Manshul Construction Corp.*, Case No. 97-CV-4295 (DAB), 1998 WL 405039, at *3 (S.D.N.Y. July 20, 1998) (emphasis added), both quoting *In re Integrated Resources, Inc.*, 157 B.R. 66, 72 (S.D.N.Y. 1993), which is also quoted in *In re Delphi Corp.*, Case No. 06-CV-863 (LTS), 2006 WL 1470929, at *3 (S.D.N.Y. May 30, 2006).

## STATEMENT OF THE CASE

### Preliminary Statement

Goodyear filed its proofs of claim for its prepetition Section 503(b)(9) Claims six months

after the passing of the applicable bar date in the Debtors' chapter 11 cases (the "Cases"). Goodyear's neglect in filing its late claims is not excusable. In the Bankruptcy Court, Goodyear did not dispute that a certificate of mailing filed by BMC Group, Inc. ("BMC"), the claims and noticing agent in the Cases, states that the bar date notice was timely mailed to the proper Goodyear address. Goodyear also did not dispute that the bar date notice for the general bar date in these Cases expressly includes section 503(b)(9) claims or that the proof of claim form provided with the notice has a specific box to check for section 503(b)(9) claims and related instructions. Goodyear's proffered excuse was that it had not expected *prepetition* section 503(b)(9) claims to be subject to the bar date for *prepetition* claims, and that a number of its employees do not recall seeing the bar date notice at the time it was transmitted by BMC and could not, at the time of their declarations filed in support of the Goodyear motion, find it in their files.

The Appellant has the burden here, and the Second Circuit takes what it calls a "hard line" on excusable neglect, focusing on the reason for the delay. As discussed below, Goodyear's proffered reason for its late filing does not excuse its neglect, and the Appellant has not met its evidentiary burden. Also, other excusable neglect factors – the length of delay and prejudice to the estates – do not weigh in the Appellant's favor but rather in the Debtors' favor. Goodyear's Motion, therefore, was appropriately denied and the Bankruptcy Court's Memorandum Decision should be affirmed.

Procedural History

On March 3, 2006 (the "Filing Date"), the Debtors filed voluntary petitions in the Bankruptcy Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Bankruptcy Court fixed September 21, 2006 (the "Bar Date") as the general bar date in these Cases for prepetition claims, expressly including Section 503(b)(9) claims. It is

undisputed that Goodyear timely filed a proof of claim asserting its prepetition general unsecured claim before the Bar Date, but waited until March 29, 2007 – over six months after the bar date to passed – to file its Section 503(b)(9) Claims.

Two weeks later, on April 13, 2007, Goodyear filed its motion (the "Motion") seeking permission of the Bankruptcy Court to file its untimely Section 503(b)(9) Claims late. Goodyear styled its Motion as seeking to *enlarge* the time to file its claim pursuant to Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") *after the time period had expired*.

The Debtors objected to Goodyear's motion, as did the Official Committee of Unsecured Creditors (the "Committee") appointed in these Cases. On May 12, 2007, Goodyear filed its Reply.[3] After a hearing held on May 23, 2007, the Bankruptcy Court denied Goodyear's Motion in its Memorandum Decision. *In re Dana Corp.*, Slip Copy, 06-10354 (BRL), 2007 WL 1577763, 48 Bank. Ct. Dec. 80 (Bankr. S.D.N.Y. May 30, 2007).

Goodyear appealed the Memorandum Decision to this Court. Veyance filed its Opening Brief as the assignee of Goodyear's Section 503(b)(9) Claims. This Brief responds to Veyance's Opening Brief.

Statement of Facts

Debtor Dana Corporation and its Debtor and non-Debtor affiliates (the "Dana Companies") are leading suppliers of modules, systems and components for original equipment manufacturer and service customers in the light, commercial and off-highway vehicle markets.

Goodyear is one of the largest tire companies in the world. It has more than 90 facilities in 28 countries, and employs more than 75,000 people.[4] As well as tires, Goodyear

---

[3] The Motion is filed at Bankruptcy Court Docket No. 5108 with a supporting memorandum of law filed at Docket No. 5110, and supporting declarations at Docket Nos. 5111 to 5114. The Committee's opposition is at Docket No. 5269, and was filed on May 10, 2007. The Debtor's opposition is at Docket No. 5270, and was also filed on May 10, 2007. Goodyear's reply is at Docket No. 5352, and was filed on May 21, 2007 (the "Reply"). An additional Declaration of a Goodyear employee is at Docket No. 5354, and was also filed on May 21, 2007. The Memorandum Decision of the Bankruptcy Court is at Docket No. 5398. Goodyear's notice of appeal of the Memorandum Decision is at Docket No. 5482, and was filed on June 11, 2007.

[4] *See, e.g*, Goodyear's press release available at http://www.goodyear.com/media/pr/23471pe.html.

manufactured engineered rubber products, such as automotive hoses. Prior to its transfer of its Engineered Products Division to Veyance on July 31, 2007, Goodyear supplied automotive hoses to some of the Dana Companies.

As stated above, on the Filing Date of March 3, 2006, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors' Cases have been consolidated for procedural purposes only and are being administered jointly. As stated above, the Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Committee is the only official committee appointed in the Cases.

On June 28, 2006, Goodyear and the Debtors entered into an Essential Supplier Agreement (the "Essential Supplier Agreement") in accordance with the authority provided by an Order of the Bankruptcy Court (Bankruptcy Docket No. 722, entered March 29, 2006). A copy of the Essential Supplier Agreement was filed under seal as an exhibit to one of the Goodyear employee declarations supporting its Motion.[5]

On June 30, 2006, the Debtors filed their schedules of assets and liabilities. Goodyear was scheduled as holding six general unsecured claims against five debtors for $3,109,995.[6]

On June 30, 2006, Goodyear filed proofs of claim (the "June 30, 2006 Proofs of Claim") asserting general unsecured claims in the amount of $863,355.51.[7] On the same date Goodyear sold the claims reflected in the June 30, 2006 Proofs of Claim to JPMorgan Chase Bank N.A. ("JP Morgan"), as stated in a notice of transfer of claims pursuant to Bankruptcy Rule 3001 filed on the same date (Bankruptcy Docket No. 1645).

On July 5, 2006, the Debtors filed their Motion of Debtors and Debtors in Possession for an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of

---

[5] It was filed as an exhibit to the Schlater Declaration (defined below).
[6] *See Memorandum of Points and Authorities in Support of Motion of The Goodyear Tire & Rubber Company for Enlargement of Time Pursuant to Rule 9006(b) of the Federal Rules of Bankruptcy Procedure to File Section 503(b) (9) Administrative Expense Claims* ("Goodyear Mem."), at 5 (Bankruptcy Docket No. 5108, filed on April 13, 2007).
[7] Goodyear filed essentially the same Proof of Claim against two debtors, Dana Corp. and Coupled Products, Inc.

Notice Thereof (Bankruptcy Docket No. 1668). This motion was granted on July 19, 2006, when the Bankruptcy Court entered its Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof (Bankruptcy Docket No. 2073) (the "Bar Date Order"). The Bar Date Order set September 21, 2006 at 5:00 p.m. Eastern time as the "General Bar Date" for filing certain prepetition claims against the Debtors' estates, including prepetition unsecured priority claims and section 503(b)(9) claims for goods sold to the Debtors within 20 days of the Filing Date. It is undisputed that the Bar Date Order expressly included section 503(b)(9) prepetition administrative priority claims in the General Bar Date:

> The General Bar Date applies to all types of claims against the Debtors that arose prior to the Filing Date, including secured claims, unsecured priority claims (including without limitation, claims entitled to priority under sections 507(a)(4), (5) and (8) and *503(b)(9)* of the Bankruptcy Code and unsecured nonpriority claims. *The filing of a proof of claim form shall be deemed to satisfy the procedural requirements for the assertion of administrative priority claims under section 503(b)(9) of the Bankruptcy Code.*

*Id.*, at ¶ 5 (emphasis added). *Cf. id.*, at ¶ 8(i) (excluding certain entities from the General Bar Date for certain types of claims, including "[a]ny holder of a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as expenses of administration (*other than any claim allowable under section 503(b)(9) of the Bankruptcy Code*).") (emphasis added).

The Bar Date Order approved a form of bar date notice (the "Bar Date Notice"), forms of proofs of claim and a "Bar Date Notice Package" to be transmitted to creditors. *Id.*, at ¶ 3. The Bar Date Notice approved by the Bankruptcy Court is entitled "NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (GENERAL BAR DATE IS SEPTEMBER 21, 2006 AT 5:00 P.M., ET). Bar Date Notice, at 1. The Bar Date Notice notifies claimants that the General Bar Date applies to section 503(b)(9) claims:

> Under the Bar Date Order, the filing of a proof of claim form shall be deemed to satisfy the procedural requirements for the assertion of administrative priority claims under section 503(b)(9) of the Bankruptcy Code. . . . *Claims under section 503(b)(9) of the Bankruptcy Code must be filed by the General Bar Date.*

*Id.*, at § 3, at p. 4 (emphasis in original). *See id.*, at § 1(a) ("The General Bar Date applies to all types of claims against the Debtors that arose prior to the Filing Date, including secured claims,

unsecured priority claims (including without limitation, claims entitled to priority under sections

507(a)(4), (5) and (8) and 503(b)(9) of the Bankruptcy Code and unsecured nonpriority

claims."). *Cf. id.*, at § 5(i), on p. 5 (excluding certain entities from the Bar Date for certain types

of claims, including "[a]ny holder of a claim allowable under sections 503(b) and 507(a)(2) of

the Bankruptcy Code as an expense of administration (*other than any claim allowable under

section 503(b)(9) of the Bankruptcy Code*).") (emphasis added).[8]  The Bar Date Notice also

provides:

> ANY ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM, BUT
> THAT FAILS TO DO SO BY THE APPLICABLE BAR DATE DESCRIBED IN
> THIS NOTICE, SHALL BE FOREVER BARRED, ESTOPPED AND
> ENJOINED FROM THE FOLLOWING:  (A) ASSERTING ANY CLAIM
> AGAINST THE DEBTORS THAT THE ENTITY HAS THAT (I) IS IN AN
> AMOUNT THAT EXCEEDS THE AMOUNT, IF ANY, THAT IS IDENTIFIED
> IN THE SCHEDULES ON BEHALF OF SUCH ENTITY AS UNDISPUTED,
> NONCONTINGENT AND LIQUIDATED OR (II) IS OF A DIFFERENT
> NATURE OR A DIFFERENT CLASSIFICATION THAN ANY CLAIM
> IDENTIFIED IN THE SCHEDULES ON BEHALF OF SUCH ENTITY (ANY
> SUCH CLAIM BEING REFERRED TO IN THIS NOTICE AS AN
> "UNSCHEDULED CLAIM"; OR (B) VOTING UPON, OR RECEIVING
> DISTRIBUTIONS UNDER, ANY PLAN OR PLANS OF REORGANIZATION
> IN THESE CHAPTER 11 CASES IN RESPECT OF AN UNSCHEDULED
> CLAIM.

*Id.*, at § 7, on p. 7. *See* Bar Date Order, at ¶ 13. And the Bar Date Notice warned that:

> A HOLDER OF A POSSIBLE CLAIM AGAINST THE DEBTORS SHOULD
> CONSULT AN ATTORNEY REGARDING ANY MATTERS NOT COVERED
> BY THIS NOTICE, SUCH AS WHETHER THE HOLDER SHOULD FILE A
> PROOF OF CLAIM.

Bar Date Notice, at § 10, at p. 8.

During the period August 2 through 7, 2006 and on August 15, 2006, BMC, the Debtors'

claims and noticing agent, served the Bar Date Notice Package upon creditors of the Debtors.

---

[8]  The face of the proof of claim form provided with the Bar Date Notice has a separate box and, within such box, a box to check for section 503(b)(9) claims, and an accompanying instruction, which states:  "Claims entitled to administrative priority under 11 U.S.C. § 503(b)(9) should be asserted by filling in the appropriate information on this Proof of Claim form. All other administrative claims must be asserted by an appropriate 'request' under 11 U.S.C. § 503(a) and should not be asserted on this Proof of Claim form."

According to the Certificate of Mailing filed by BMC on August 22, 2006 (Bankruptcy Docket No. 3118) (the "Certificate of Mailing"), the Bar Date Notice Package was mailed by BMC between August 2-7, 2006 to Goodyear addressed to its Law Department at the same address shown on the June 30, 2006 Proofs of Claim.[9]

The Bar Date Notice was also published in *The Wall Street Journal* and *The Toledo Blade* on August 3, 2006.[10]

Over six months after the General Bar Date had passed, on March 29, 2007, Goodyear filed its proofs of claim for its Section 503(b)(9) Claims for $1,410,053.85 for debt allegedly incurred during the period February 8[11] through March 2, 2006 (the "March 29, 2007 Proofs of Claim").

## **ARGUMENT**

The Appellee addresses each of the Issues Presented in the order presented by the Appellant in its Opening Brief. For the reasons set forth below, the appeal should be denied.

As the Bankruptcy Court found here: "The burden of proving excusable neglect is on the movant who is seeking to enlarge his time." *Dana Corp.*, 2007 WL 1577763, at *3, citing *In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. 1002, 1005 (S.D.N.Y. 1993); *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993). *See Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 121 (2d Cir. 2005) ("The burden of proving

---

[9] The June 30, 2006 Proofs of Claim reflect the following name and address for Goodyear: The name of the creditor is listed as: "The Goodyear Tire & Rubber Company" and set forth the following address "where notices should be sent: Law Department 1144 East Market Street Akron, Ohio 44316." The following appears as the forth entry on page 4593 of Exhibit A to BMC's Certificate of Mailing of the Bar Date Notice Package on August 2-7, 2006: "GOODYEAR TIRE & RUBBER COMPANY THE, LAW DEPARTMENT, 1144 EAST MARKET ST., AKRON OH, 44316," showing Mode of Service as "US Mail (1st Class)." According to BMC's business records, the mailing of the Bar Date Notice Package to the Law Department was made on August 2, 2006. Such business records also show that the envelope containing the Bar Date Notice Package that was mailed to the above address on August 2, 2006 was not later returned by the United States Postal Service ("USPS") to BMC as undeliverable. The Certificate of Mailing also shows that BMC mailed the Bar Date Notice Package to Goodyear 21 times, with four of the packages being mailed to the 1144 East Market Street address, including one package specifically addressed to the Law Department.

[10] *See Affidavits of Publication of the Notice of Deadlines for Filing Proofs of Claim (General Bar Date is September 21, 2006 at 5:00 P.M. ET)*, filed on August 25, 2006 (Bankruptcy Docket No. 3172).

[11] The 20-day period for Section 503(b)(9) Claims, however, commenced on February 11, 2006.

excusable neglect lies with the late-claimant.") (citations omitted). The burden continues on

appeal. *See Trade Creditor Group v. L.J. Hooker Corp., Inc. (In re Hooker Investments, Inc.)*,

188 B.R. 117, 120 (S.D.N.Y. 1995) ("the present appellants bear the burden of persuasion, just

as in the bankruptcy court. . . ."). *See also* Bankr. Evid. Manual § 301.30 ("The party seeking

review of a bankruptcy judge's determination bears the burden of proof. . . ."). Appellant has

failed to meet this burden below and in this Court.

**A.     The Bankruptcy Court Applied the Appropriate Standard to Appellant's Attempt
To Rebut the Presumption of Delivery of the Bar Date Notice and Appropriately
Concluded that Appellant Should Be Presumed To Have Received the Bar Date
Notice.**

Appellant first argues that the Bankruptcy Court applied the wrong legal standard in

regard to Goodyear's attempt to rebut the presumption of delivery of the Bar Date Notice to

Goodyear. This contention is without merit.

In its Memorandum Discussion, the Bankruptcy Court made the following findings of

fact:

> Here, Goodyear has failed to overcome the presumption of receipt. Goodyear
> failed to demonstrate that the Bar Date Notice was not mailed nor that there was
> any deficiency in the address or mailing process. Despite Goodyear's attempts to
> trace its receipt of mail and forwarding procedures, I find it incredulous that of 21
> Bar Date Notices mailed, including Notices sent to Goodyear's general counsel
> and chief executive officer, Goodyear failed to receive even one.

*Dana Corp.*, 2007 WL 1577763, at *5 (citations omitted).

The Bankruptcy Court considered Goodyear's assertion that:

> After the Debtors obtained the Bar Date, they claim to have served a notice of the
> Bar Date on hundreds of thousands of addresses, including several addresses for
> Goodyear. Notwithstanding that certificate of service, the notice of the Bar Date
> was not received by any office at Goodyear with the responsibility over legal
> process, in particular its Law Department.

Goodyear Mem., at 2.

Goodyear, however, *admitted* in the Court below that the Certificate of Mailing reflects

that the Bar Date Notice was mailed to Goodyear at the proper address and to the attention of the

appropriate department:

> [T]he Debtors *did* purport to mail the notice to Goodyear's Law Department, the one address on Goodyear's unsecured proof of claim filed on June 30, 2006, and that was designated as the correct address for service to Goodyear.

Goodyear Mem., at 6 (emphasis added). The Appellant also acknowledges this fact in its opening brief on this appeal. *See* App. Brief, at 8. ("However, the debtors did purport to mail the notice to Appellant's [Goodyear's] Law Department, the one address that was designated in Appellant's [Goodyear's] general unsecured proof of claim as the correct address for service to Appellant [Goodyear].").[12]

The Bankruptcy Court appropriately recognized and applied the well-established presumption of delivery when a document is posted in the U.S. Mail. "It is black letter law that once an item is properly mailed, the law presumes it is received by the addressee."[13] The Bankruptcy Court found that the presumption of mailing "is a very strong presumption," and recognized that "[s]ome courts require clear and convincing evidence to overcome the presumption of delivery." 2007 WL 1577763, at *4 (citations omitted).

Below, Goodyear did *nothing* to rebut the presumption of delivery, instead proffering declarations stating merely that, to the knowledge of the declarants, Goodyear had not received the Bar Date Notice. This effort was plainly insufficient to rebut the presumption of delivery.

Significantly, due process does not require proof of actual receipt of mail. *Mid-Miami Diagnostic*s, 195 B.R., at 22-23, citing *In re Nutri\*Bevco, Inc.*, 117 B.R. 771, 781 (Bankr. S.D.N.Y. 1990). An unrebutted certificate of mailing is *deemed* to establish receipt by the addressee:

> [Debtor] ENA has established this presumption with respect to [creditor] Stratum by submitting [claims agent] BSL's sworn affidavit, which shows that the Notice Package, which included the Bar Date Notice, was properly addressed to Stratum and properly sent by first class mail on August 10, 2002. This shifts the burden to

---

[12] See F.R.Bankr.P. 2002(g)(1) (proper address for notices required to be served under Rule 2002 is the address on a filed proof of claim).
[13] *In re Alexander's, Inc.*, 176 B.R. 715, 721 (Bankr. S.D.N.Y. 1995); *Black v. Diamond*, 163 Fed.Appx. 58, 61 (2d Cir. Jan. 19, 2006) (unpublished), citing *In re Cedant Prides Litigation*, 311 F.3d 298, 304 (3d Cir. 2002) for "noting that the presumption of receipt of proven mailing 'rests on the dependability of the U.S. Postal Service.'" *See In re Mid-Miami Diagnostics, L.L.P.*, 195 B.R. 20, 22-23 (Bankr. S.D.N.Y. 1996) ("Where mail is properly addressed, stamped and deposited in the postal system, a rebuttable presumption arises that notice was received by the addressee.") (citations omitted).

Stratum to rebut the presumption of receipt of the notice. Stratum CFO's self-serving declaration asserting non-receipt of the Notice Package is insufficient to rebut the presumption of receipt. The Court finds, therefore, that Stratum is *deemed to have received* the Bar Date Notice.

*In re Enron Corp.*, 2003 WL 21756785, at *3 (Bankr. S.D.N.Y. July 30, 2003) (emphasis added). "It is the Claimant's responsibility to rebut the presumption of receipt of the [n]otice." *Alexander's*, 176 B.R., at 721.

"Since the law presumes that a properly mailed notice is received by the addressee, the addressee must do more than simply deny that it received notice. *Id.* Proof in addition to denial of receipt is necessary to rebut the presumption. *Id.*; *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993). "A creditor's denial of receipt, standing alone, does not rebut the presumption that the mail was received, but merely creates a question of fact." *Mid-Miami Diagnostics*, 195 B.R., at 23.[14]

Contrary to the Appellant's assertion, the Bankruptcy Court did consider the evidence proffered by Goodyear in determining whether it had rebutted the presumption of mailing. The only "evidence" Goodyear presented were five declarations of Goodyear personnel (collectively, the "Declarations")[15] containing their own recollections as well as hearsay recollections of other employees (some unnamed) stating that they had not seen the Bar Date Notice.

These self-serving declarations carry no more weight than the similar declaration in *Enron*, which the *Enron* Bankruptcy Court in that case found unavailing to overcome the presumption of receipt of the bar date notice. *Enron*, 2003 WL 21756785, at *3. The Declarations did not address any alleged failure by Debtors or BMC to mail notice to Goodyear (which would have been the relevant inquiry). Instead, the Declarations addressed *Goodyear's* own flawed process for handling the receipt and internal distribution of mail within Goodyear,

---

[14] The Bankruptcy Court cites additional relevant cases in the Memorandum Decision discussing the presumption of mailing. 2007 WL 1577763, at *4-*5.

[15] The Declarations were made by Damon J. Audia, currently Treasurer ("Audia" making the "Audia Declaration"); Bertram Bell, Associate General Counsel and Assistant Corporate Secretary ("Bell" making the "Bell Declaration"); James R. King, "an attorney in Goodyear's Engineered Products Division" ("King" making the "King Declaration"); and Benjamin J. Schlater, a Director of Business Development and Financial Planning in Goodyear's Engineered Products Division ("Schlater" making the "Schlater Declaration"). In addition, Goodyear paralegal Marlene Petroff ("Petroff") made her Declaration (the "Petroff Declaration"), which was filed with Goodyear's Reply.

which does nothing to relate the presumption of delivery by BMC.

Even assuming the Appellant were correct that an inquiry into a creditor's internal mail handling practices would be relevant in an excusable neglect inquiry, here, the Declarations evidenced a procedure that is remarkably flawed. The Declarations describe a process by which bankruptcy notices were forwarded within Goodyear from office to office on alternative, multiple, and sometimes dead-ending paths.

According to the Declarations, legal notices received by mail were processed as follows:

    (1)    Items Received by President's Office Forwarded to Treasurer.

If an item was received by President Keegan's office that pertains to the Debtors' Cases, after mid-to-late March 2006, it was forwarded to Treasurer Audia, who with the assistance of an unnamed secretary kept the originals in a file (presumably in the Treasury Department's office). Bell Declaration, at ¶ 7; Audia Declaration, at ¶¶ 3, 4.[16] According to Audia, his secretary "frequently" forwarded copies to King (in the Engineered Products Division) or Schlater (also, in the Engineered Products Division). Audia Declaration, at ¶ 4. King declared only that he received copies of initial bankruptcy notices regarding the commencement of the Debtors' cases and the formation of the creditors' committee. King Declaration, at ¶ 2. None of the Declarations assert that any of these items were forwarded to Bell's office in the Law Department by Audia, King, Schlater or anyone else. Apparently, notices in other bankruptcy cases followed a different route, from the President's office they were forwarded to unnamed persons in the General Counsel's office, which "routinely" forwards them to Bell. Bell Declaration, at ¶ 7.

---

[16] Bell states that "[a]fter mid- to late- March 2006 . . . Mr. Keegan's office forwarded items received regarding the Dana bankruptcy case to Damon J. Audia, then Assistant Treasurer . . ." Bell Declaration, at ¶ 7. The Bar Date Notice was mailed in early August 2006, which is "[a]fter mid- to late- March 2006." *See* Audia Declaration, at ¶ 4 (notices in Dana's case forwarded by Keegan to Audia, who then with his unnamed secretary filed originals and forwarded copies "frequently" to King or Schlater).

(2)    Bankruptcy Notices Received by Goodyear Forwarded to Secretary in Law Department.

Bell declared that if a "bankruptcy notice" was "received by Goodyear" it would be "directed to my [Bell's] office in Goodyear's Law Department." *Id.*, at ¶ 2. Bell stated that, under his supervision, his (unnamed) secretary maintains a log, files copies of "relevant portions" of notices and "forwards copies of these pleadings to the staff assigned to the particular matter." *Id.*

(3)    Secretary Forwards Bankruptcy Notices to Paralegal.

Also, according to Bell, his unnamed secretary forwards bankruptcy notices to paralegal Petroff, who has "files she maintains for Goodyear." Petroff "assists an [unnamed] *outside* counsel in reviewing and responding to bankruptcy notices and all bankruptcy matters." *Id.*, at 3 (emphasis added). *See* Petroff Declaration at ¶ 3 (paralegal Petroff reviews "all bankruptcy notices and draft proofs of claim with an outside counsel who maintains an office at Goodyear's Law Department one day a week.").

So, apparently, the only people who routinely see bankruptcy notices addressed to Goodyear in general or the Law Department specifically are mailroom clerks, Bell's secretary, paralegal Petroff and possibly outside counsel. Bell did not state that he or any other attorney in the Law Department reviews bankruptcy notices. He also did not state what happens to bankruptcy notices when Petroff assists outside counsel.[17]

All of Goodyear's "evidence," however, has little weight. It is about Goodyear's *internal* process, and even if Goodyear were able to prove that it handled notices diligently in the past,

---

[17] The Petroff Declaration fails to address this point as well (what happens to bankruptcy notices when Petroff assists the unidentified outside counsel, who only appears at Goodyear's Law Department office once a week and is elsewhere the rest of the week). Significantly, the Petroff Declaration was filed with Goodyear's Reply *after the Debtors raised this point in their opposition below.* Also, the Declarations contain numerous references to unnamed employees and generally to more than one "office." The Bar Date Notice Package was mailed to Goodyear's Law Department in August, 2006. It is possible that some of the employees who "routinely" forward bankruptcy notices were on vacation in August. Bell and Goodyear's other declarants do not even attest to whether the personnel of which they speak were even working at the time the notices were received by Goodyear, so it is questionable whether any "routine" was followed.

proof of past diligence in a case would not excuse neglect. *Seinfeld v. Worldcom, Inc.*, 2007 WL 987867, at *4 (S.D.N.Y. Apr. 4, 2007) ("Appellant's justification that there was 'no pattern of willful default or neglect' is inapposite. It is unnecessary to explore Seinfeld's diligence or lack thereof over the course of the four and a half years he has pursued this litigation.") (footnote omitted).

Goodyear's "evidence" proves nothing to dispute that the Bar Date Notice Package was mailed to Goodyear's Law Department by BMC. In fact, no evidence was presented by Goodyear that would show that BMC failed to mail the Bar Date Notice Package or that there was any deficiency whatsoever in the addressing or mailing process employed by BMC.[18] To the contrary, as stated above, Goodyear and the Appellant even admit that the notice was mailed to the correct address and department. Goodyear Mem., at 6-7; App. Brief, at 8.

The only excuse Goodyear gives is conjecture that "[i]ts delay in filing was caused by the failure of the process for serving notices of the Bar Date, which *might* have resulted from either the failure of the noticing agent to actually mail all of the notices to the addresses identified on its 13,000 page certificate of service or a failure of the postal service to deliver the notices to Goodyear." *Id.*, at 9 (emphasis added). *See* App. Brief, at 14 ("the failure of any notice to be received by the one employee of the Appellants [sic] [Goodyear] responsible for bankruptcy matters creates an inference that an inadvertent error may have been made by the Debtors' noticing agent."). Such rank speculation is no substitute for evidence to overcome the presumption of receipt.

The Second Circuit has recognized that in a denial of receipt case, that *it is more likely that counsel overlooked a notice than it was not mailed:*

> [A]t least four notices of various forms were sent to its treasurer, Johnson, at its Chicago address. The inference that not all of these communications failed of arrival is rather violent; and in the face of so circumstantial a statement for Peerless and no response, much less one equally circumstantial, from claimant, *it*

---

[18] *See U.S. Lines, Inc. v. U.S. Lines Reorganization Trust*, 262 B.R. 223, 240 (S.D.N.Y. 2001), *aff'd* 318 F.3d 432 (2d Cir. 2003) ("No procedural deficiency has been found here, thus *Pioneer Investment* is inapposite.").

> *seems more probable that the presently important details of these communications*
> *were overlooked, rather than that they were not received at all.*

*North Am. Car Corp. v. Peerless Weighing & Vending Machine Corp.*, 143 F.2d 938, 940-41 (2d

Cir. 1944) (emphasis added), quoted in part by the Bankruptcy Court here at 2007 WL 1577763,

at *5, and cited in *In re Torres*, 15 B.R. 794, 796-97 (Bankr. E.D.N.Y. 1981).[19]

In fact, the Appellant admits this possibility, *i.e.*, that Goodyear overlooked the Bar Date

Notice, occurred here:

> Appellant's circumstances in this case – having already filed its general claims –
> may have caused a general bar date notice without conspicuous reference to
> Section 503(b)(9) administrative claims to be *easily overlooked*.

App. Brief., at 19 (emphasis added).

As the Bankruptcy Court found:

> Despite Goodyear's attempts to trace its receipt of mail and forwarding
> procedures, I find it incredulous that of 21 Bar Date Notices mailed, including
> Notices sent to Goodyear's general counsel and chief executive officer, Goodyear
> failed to receive even one.

2007 WL 1577763, at *5, citing among other cases the Second Circuit's *North Am. Car Corp.*

The Bankruptcy Court considered all of the evidence presented by Goodyear, such as it

was, made its factual findings, and correctly held that Goodyear failed to overcome the

presumption of mailing as it has been applied in relevant precedent. This holding should be

affirmed.

**B.      The Bankruptcy Court Considered Goodyear's Evidence Proffered to Rebut the
         Presumption of Delivery and was not Required to Conduct an Evidentiary Hearing.**

Bankruptcy Rule 9017 states in pertinent part:

> The Federal Rules of Evidence and Rules 43, 44 and 44.1 F.R.Civ.P. apply in
> cases under the [Bankruptcy] Code.

---

[19]  The Appellant makes no attempt to distinguish the Second Circuit's *North Am. Car Corp.* case cited as authority
in by the Bankruptcy Court in the Memorandum Decision. Instead, the Appellant focuses on *In re Dodd*, 82 B.R.
924 (N.D. Ill. 1987), a chapter 13 case from a court located outside of the Second Circuit that the Appellant claims
supports its argument on appeal. App. Brief, at 12-13. In a footnote, however, the Appellant distinguishes its own
legal authority. App. Brief, at 13 n. 6 ("*Dodd* did not technically make a finding of excusable neglect for purposes
of enlargement of time under [Bankruptcy] Rule 9006.").

F.R.Bankr.P. 9017. Rule 43 of the Federal Rules of Civil Procedure states in pertinent part:

> When a motion is based on facts not appearing of record the court may hear the
> matter on affidavits presented by the respective parties, but the court may direct
> that the matter be heard wholly or partly on oral testimony or deposition.

F.R.C.P. 43(e) (subsection entitled "Evidence on Motions").

Here, the Appellant contends it was reversible error for the Bankruptcy Court not to

conduct an evidentiary hearing, and seeks such a hearing as alternative relief:

> Alternatively, to the extent the [Bankruptcy] Court applied the correct legal
> standard, but questioned the veracity or accuracy of the Appellant's [Goodyear's]
> evidence, it erred by doing so without an evidentiary hearing necessary to weight
> the evidence properly.

App. Brief, at 4. However, the Bankruptcy Court considered all of the evidence presented by

Goodyear, which it chose to provide in the form of Declarations, and properly concluded that no

evidentiary hearing was necessary.

For its proposition that the Bankruptcy Court should have conducted on evidentiary

hearing and not merely relied upon the Appellant's declarations, Appellant relies on *In re*

*Khachikyan*, 335 B.R. 121, 125-26 (9th Cir. BAP 2005), in which the Ninth Circuit Bankruptcy

Appellate Panel in turn, relied on a concurring opinion in the Ninth Circuit's BAP's decision in

*U.S. v. Valley Nat'l Bank (In re Decker)*, 199 B.R. 684, 690 (9th Cir. BAP 1996) (Klein J.

concurring). In *Decker*, Judge Klein stated in his concurring opinion that:

> The main difference [between an adversary proceeding and a contested matter] in
> the taking of evidence is that Federal Rule of Civil Procedure 43(e) permits
> evidence to be taken on the contested matter by affidavit or deposition.

Id., at 690.[20]

Appellant's argument is misguided for it admits in its Opening Brief that the appeal here

is from the disposition of a contested matter. App. Brief, at 1 ("The decision appealed from

---

[20] *See In re Applin*, 108 B.R. 253, 257 (Bankr. E.D. Cal. 1989) ("Evidence on routine motions for relief from stay in this court is generally taken on affidavits as permitted by Federal Rule of Civil Procedure 43(e) unless it appears that live testimony would be of assistance to the trier of fact. Local Rule 3. This enables the court to winnow the genuine disputes of fact and law from the 2,500 'contested matters' under Bankruptcy Rule 9014 that annually appear on its calendar.") (footnotes omitted).

herein was the Memorandum Decision of the Bankruptcy Court in a contested matter . . . .").

Thus, the Court below could properly dispose of the matter upon consideration of Appellant's

declarations.

As the Bankruptcy Appellate Panel for the Second Circuit stated:

> As a further preliminary matter, we find the Appellant's complaint that "there was
> no testimony taken or documentary evidence presented," Appellant's Brief at 13,
> to be without foundation. Federal Rule of Civil Procedure 43(e), made applicable
> to cases under the Bankruptcy Code by Federal Rule of Bankruptcy Procedure
> 9017, provides that the court may hear motions on affidavits presented by the
> respective parties or may direct the matter be heard wholly or partly on oral
> testimony or deposition. See FED.R.CIV.P. 43(e) and FED.R.BANKR.P. 9017;
> see also e.g. First Republicbank Dallas v. Gargyle Corp., 91 B.R. 398, 401 n. 5
> (N.D.Tex. 1988); In re Ravick Corp., 106 B.R. 834, 835 n.1 (Bankr. D.N.J. 1989).
> As very recently stated by the Second Circuit, "motions may be decided wholly
> on the papers, and usually are." Greene v. WCI Holdings Corp., 136 F.3d 313,
> 315 (2d Cir. 1998)(quoting World Brilliance Corp. v. Bethlehem Steel Co., 342
> F.2d 362, 366 (2d Cir. 1965)). A proceeding to dismiss a case or convert a case to
> another chapter is a contested matter to be heard upon motion. FED.R.BANKR.P.
> 1017(d) and 9014. Thus, a court may rely upon affidavits in a proceeding to
> convert or dismiss. See, e.g. In re Ravick Corp., 106 B.R. at 835 n.1 (quoting In re
> Apex Properties, Ltd., Civil Action No. 88-0056 (D.N.J., May 6, 1988)).

Blaise v. Wolinsky (In re Blaise), 219 B.R. 946, 949 (2d Cir. BAP 1998).[21]

As one United States District Court stated:

> Unless ex parte affidavits are permitted by rule, e.g., Fed.R.Bankr.P. 4001(a)(3),
> the bankruptcy court must always permit the opposing party to challenge the

---

[21] See McCall v. City of Danbury, 16 Fed. Appx. 77, 80 (2d Cir. 2001) ("As we noted over thirty years ago, '[m]otions may be decided wholly on the papers, and usually are."), quoting Greene, 136 F.3d, at 315-16, which quoted World Brilliance, 342 F.2d, at 366; In re Ravick Corp., 106 B.R. 834, 835 n.1 (referencing F.R.Bankr.P. 9017 and F.R.C.P. 43(e), "[i]t is axiomatic that affidavits constitute proper evidence on motion) (citation omitted). See also FCC v. WJR, 337 U.S. 265, 274-75, 69 S.Ct. 1097, 1103 (1949) ("Taken at its literal and explicit import, the Court's broad constitutional ruling cannot be sustained. So taken, it would require oral argument upon every question of law, apart from the excluded interlocutory matters, arising in administrative proceedings of every sort. This would be regardless of whether the legal question were substantial or insubstantial; of the substantive nature of the asserted right or interest involved; of whether Congress had provided a procedure, relating to the particular interest, requiring oral argument or allowing it to be dispensed with; and regardless of the fact that full opportunity for judicial review may be available. We do not stop to consider the effects of such a ruling, if accepted, upon the work of the vast and varied administrative as well as judicial tribunals of the federal system and the equally numerous and diversified interests affected by their functioning; or indeed upon the many and different types of administrative and judicial procedures which Congress has provided for dealing adjudicatively with such interests. It is enough to say that due process of law, as conceived by the Fifth Amendment, has never been cast in so rigid and all-inclusive confinement."). Accord Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 391 (6th Cir. 1975) (Federal Rules do not require oral hearing on motion to dismiss).

proponent's affidavits. The bankruptcy court need not, however, conduct a hearing to permit cross-examination or contravention where the rules do not otherwise require one. For example, Fed.R.Civ.P. 43(e) is made applicable to the bankruptcy court by Fed.R.Bankr.P. 9017. If not expressly precluded from doing so, the bankruptcy court, without conducting a hearing, may receive Rule 43(e) affidavits and counteraffidavits. See by analogy *Federal Savings & Loan Insurance Corp. v. Dixon*, 835 F.2d 554, 558-59 (5th Cir. 1987) (permitting use of Rule 43(e) affidavits in deciding preliminary injunction motion). The Rule 43(e) procedure does not run afoul of the court's decision today because, according to that procedure, the opposing party can challenge the proponent's affidavits and submit counteraffidavits of its own.

*First Republicbank Dallas, NCNB v. Gargyle Corp.,* 91 B.R. 398, 401 n.5 (N.D. Tex. 1988).

Here, in the Memorandum Decision, the Bankruptcy Court set forth a detailed description of the evidence presented:

Goodyear contends however that the Bar Date Notice was not received by Goodyear's Law Department or any other office at its headquarters. Goodyear also contends that its Law Department, and specifically the office of one of its associate general counsels, maintains a strict procedure for tracking the receipt of bankruptcy notices and service of process which includes forwarding all bankruptcy notices to a paralegal responsible for bankruptcy and collection matters who then ensures that they are brought to the attention of counsel. The legal department also maintains a detailed log of all notices and summonses received, including bankruptcy notices delivered to the bankruptcy and collection paralegal. That log does not include a listing of a claims bar date notice in the Debtors' cases. Moreover, Goodyear also contends that its bankruptcy paralegal has no recollection of the notice, is confident that she would have recognized the importance of a bar date notice if received, and has confirmed that no bar date notice or order appears in the file she maintains for the Debtors' cases.

The Debtors' certificate of service regarding the Bar Date Notice also states that notices were mailed to Goodyear's general counsel and chief executive officer. Goodyear contends that those offices routinely direct all legal process and notices concerning bankruptcies to the same associate general counsel whose office in the law department tracks legal process and who delivers bankruptcy notices to the bankruptcy and collection paralegal. Goodyear argues that office also did not receive the Bar Date Notice. Similarly Goodyear submits that its Chief Executive Officer forwards copies of bankruptcy pleadings received by his office to Damon Audia, an assistant treasurer of the company, who maintains a file for the Debtors' case as well. Upon investigation, Goodyear determined that materials were located in that file pertaining to the Debtors' cases but did not include the Bar Date Notice. Mr. Audia has no recollection of receiving the Bar Date Notice. Mr. Audia also assertedly forwards copies of legal notices in the Debtors' cases to an attorney and a financial planning director in Goodyear's Engineered Products Division, neither of whom have any recollection of the Bar Date Notice nor a

copy of the notice in their files. On March 29, 2007, over six months after the Bar
Date had passed, Goodyear filed its 503(b)(9) Claim.

2007 WL 1577763, at * 2.

From the quote above, it is clear that the Bankruptcy Court carefully considered all of the evidence presented by Goodyear.[22] In fact, the Appellant recognizes that the Bankruptcy Court gave Goodyear's proffered evidence such consideration. *See* App. Brief at 16 ("Appellant [Goodyear] submitted *declarations providing specific evidence* of Appellant's [Goodyear's] internal procedures for recording internal receipt of bankruptcy notices . . .") (emphasis added). *Cf. id.*, at 5 ("uncontested evidence").

Now Appellant Veyance, successor to Goodyear's Section 503(b)(9) Claims, argues that the Bankruptcy Court should have conducted an evidentiary hearing to permit Goodyear to present testimonial evidence in addition to the "specific" and "uncontested" evidence the Appellant's admits was provided to and considered by the Bankruptcy Court. The only evidence, however, that *Goodyear* sought to present in any form was about its internal mail handing, which was uncontested but which the Bankruptcy Court found was not the evidence needed to rebut the presumption of mailing.

That Appellant Veyance wishes that Goodyear had addressed the relevant issues differently is not a reason to reverse the Memorandum Decision – the Bankruptcy Court could only consider the evidence Goodyear chose to present in the form presented, and the Court did consider it in denying Goodyear's Motion and found it simply insufficient.[23] Accordingly, the Court below did not err in not conducting an evidentiary hearing and the Memorandum Decision should, therefore, be affirmed.

---

[22] The Appellant recognizes the Declarations were Goodyear's sole evidence, and that they addressed the internal handling of mail. App. Brief, at 16 ("In support, Appellant [meaning in the App. Brief, Goodyear] submitted declarations providing specific evidence of Appellant's [Goodyear's] internal procedures for recording receipt of bankruptcy notices . . . .").

[23] For instance, the Appellant (Veyance) states that the Bankruptcy Court committed reversible error because the court did not permit Goodyear to cross-examine the noticing agent. App. Brief, at 17. Goodyear, however, never asked the Debtors or the noticing agent BMC for *any* discovery (documentary or depositional) and had not made any request of the Debtors for a discovery scheduling stipulation or the Bankruptcy Court for a scheduling order.

C.    **The Bankruptcy Court was Correct in Concluding that the Reasons for Appellant's Delay in Filing Its Section 503(b)(9) Claims Did Not Warrant a Finding of Excusable Neglect.**

As stated above, Appellant argues that Goodyear's neglect is excusable because: (1) Goodyear did not expect the Bar Date for *prepetition* claims to cover *prepetition* section 503(b)(9) claims; and (2) a number of Goodyear employees do not recall seeing the Debtors' Bar Date Notice nor could find it in their own files. The Bankruptcy Court correctly concluded that these assertions do not support the conclusion that Goodyear's neglect to timely file a section 503(b)(9) claim is excusable under applicable law.

Appellant does not dispute that the BMC's Certificate of Mailing states that the Bar Date Notice Package was timely mailed to the proper Goodyear address.[24] Nor does Appellant dispute that the Bar Date Notice expressly applies to section 503(b)(9) claims and that the proof of claim form accompanying the Bar Date Notice has a specific box to check for section 503(b)(9) claims and related instructions. Appellant contends nonetheless that it did not understand that the Bar Date Notice applied to its belatedly asserted Section 503(b)(9) claims.

The record below also reflects that Goodyear was not an unsophisticated creditor that was taken unawares by these bankruptcy cases, but precisely the contrary. Goodyear filed proofs of claim for its general unsecured claims prior to the establishment of the General Bar Date and admittedly did so in order to sell those claims to JP Morgan. Goodyear Mem., at 5. It had also made a reclamation demand early in the cases,[25] and entered into an essential supplier agreement with the Debtors. It also interviewed to become a member of the Committee (but was not selected).[26]

---

[24] As stated above, Goodyear stated: "[T]he Debtors did purport to mail the notice to Goodyear's Law Department, the one address that appeared on Goodyear's unsecured proof of claim filed on June 30, 2006, and that was designated as the correct address for service for Goodyear." Goodyear Mem., at 6. *See* App. Brief, at 8 ("the Debtors did purport to mail the notice to Appellant's [Goodyear's] Law Department, the one address that was designated in the Appellant's [Goodyear's] general unsecured proof of claim as the correct address for service to Appellant [Goodyear]."). "The Debtors' certificate of service regarding the Bar Date notice also states that notices were mailed to Goodyear's general counsel and chief executive officer." Goodyear Mem., at 7.

[25] Postpetition, on March 8, 2006, Goodyear filed its Reclamation Demand against the Debtors in the amount of $2,789,413.11 (the "Reclamation Demand").

[26] Goodyear Mem., at 7; Audia Declaration (defined below), at p 2; Bell Declaration (defined below), at ¶ 6.

It is evident that Goodyear, a large corporation, with experienced counsel, had actual and timely notice of the bankruptcy cases and ample time to file its section 503(b)(9) claims before the General Bar Date. It is as sophisticated a creditor as they come, and the record reflects that it deliberately chose *not* to include its section 503(b)(9) claims in its timely-filed proofs of claim for a business reason.[27]

In light of all the foregoing circumstances, the Bankruptcy Court was correct in determining not to excuse Goodyear's neglect. Its Motion was properly denied and the Memorandum Decision should be affirmed.

Under settled law, Goodyear's and the Appellant's proffered excuses do not qualify as "excusable neglect." "A bar order serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization . . . . Thus, a bar order does not 'function merely as a procedural gauntlet,' . . . but as an integral part of the reorganization process." *In re Musicland Holding Corp.*, 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006), quoting *First Fidelity Bank, N.A. v. Hooker Invs. Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 840 (2d Cir. 1991); *In re Keene*, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995) (same; citations omitted).

Thus, under the Bankruptcy Code, a claim that is asserted late is disallowed. 11 U.S.C. § 502(b)(9). *See In re Mid-Miami Diagnostics*, L.L.P., 195 B.R. 20, 22 (Bankr. S.D.N.Y. 1996) (section 502(b)(9) was enacted in 1994 amendments by Congress to overrule cases allowing untimely filed claims).

Excusable neglect is the route for allowing an untimely claim. As the United States District Court for the Southern District of New York recently stated:

> The Court . . . notes that the Bar Date Order was meant to function as a statute of limitations and effectively exclude such late claims in order to provide the

---

[27] Goodyear admits that "[b]ecause the market for Section 503(b)(9) Claims was not sufficiently attractive, Goodyear held those claims and waited for instructions regarding how they would be administered under the new rules." Goodyear Mem. at 16.

> Debtors and their creditors with finality to the claims process and permit the
> Debtors to make swift contributions under any confirmed plan of reorganization.
> To find otherwise, that is outside the context of excusable neglect, would vitiate
> the Debtors' reorganization process.

*In re Enron Corp.*, 2007 WL 610404, at *10 (Bankr. S.D.N.Y. Feb. 23, 2007) (unpublished),

quoting *In re Enron Corp.*, 298 B.R. 513, 526 (Bankr. S.D.N.Y. 2003), *aff'd Midland*

*Cogeneration Venture Ltd. v. Enron Corp (In re Enron Corp.)*, 419 F.3d 115 (2d Cir. 2005). *See*

*In re Enron Corp.*, 2007 WL 294114, at *6 (Bankr. S.D.N.Y. Jan. 31, 2007) (unpublished)

(same). "Where . . . no excusable neglect was shown, the late filing is not permitted." *Lynch v.*

*IRS*, 430 F.3d 600, 605 (2d Cir. 2005).

As stated above, the burden to demonstrate excusable neglect is on the party seeking to

assert the late claim. *Enron*, 419 F.3d, at 121; *In re Enron Corp.*, 2003 WL 1889042, at *3

(Bankr. S.D.N.Y. Apr. 8, 2003); *In re Nutri*Bevco, Inc.*, 117 B.R. 771, 785 (Bankr. S.D.N.Y.

1990) (burden on party seeking to be relieved of time bar); *Keene*, 188 B.R., at 907 n.2.

A party claiming excusable neglect, however, must show more than that it was neglectful,

it must show that the neglect was in fact "excusable":

> Applied here, Proof of Claim Counsel's failure to adhere to the Bar Date and file
> a timely claim was certainly careless. However, the ordinary definition of neglect
> already incorporates this concept. PPC has not met its burden of proof that even
> though Proof of Claim Counsel was careless, that the equities necessitate the
> conclusion that Proof of Claim Counsel's carelessness was also excusable.

*In re Enron Corp.*, 2003 WL 1889042, at *6 (Bankr. S.D.N.Y. Apr. 8, 2003).

In *Pioneer*, the United States Supreme Court set out a four factor test for excusable

neglect, weighing:

1. The danger of prejudice to the debtor,

2. The length of the delay and its potential impact on judicial proceedings,

3. The reason for the delay, including whether it was within the reasonable control

of the movant, and

4. Whether the movant acted in good faith.

*Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 395, 113 S.Ct.

1489 (1993).

After *Pioneer*, the Second Circuit took what it described as a "hard line" approach to excusable neglect claims and focused on the third factor, the reason for the delay:

> We have "taken a hard line" in applying the *Pioneer* test. . . . "[W]e and other circuits have focused on the third factor: 'the reason for the delay, including whether it was within the reasonable control of the movant.'" And we cautioned "that the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule," and "that where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test.". . . .

*Enron*, 419 F.3d at 122-24 (citations omitted). "[T]he four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a close[ ] case, the reason-for-delay factor will always be critical to the inquiry." *Id.*, at 123, quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 367-68 (2d Cir. 2003), cert. denied *sub nom. Essef Corp. v. Silivanch*, 540 U.S. 1105, 124 S.Ct. 1047, 157 L.Ed.2d 890 (2004), quoting *Graphic Communications Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5-6 (1st Cir. 2001).

Under the Second Circuit's "hard line" test, the party asserting excusable neglect "will, in the ordinary course, lose." *Duke v. County of Nassau*, 63 Fed. Appx. 558, 561 (2d Cir. 2003) ("This Court has noted that 'a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test.'"), quoting *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 251 (2d Cir. 1997), *cert. denied* 522 U.S. 1117, 108 S.Ct. 1055 (1998); *In re Enron Corp.*, 2007 WL 610404, at *8 (Bankr. S.D.N.Y. Feb. 24, 2007).[28]

---

[28] The Second Circuit recognized the need for a hard-line test:
   It is not only a question of the need for finality.

> We operate in an environment . . . in which substantial rights may be, and often are, forfeited if they are not asserted within time limits established by law. Judges, of course, make mistakes. We, like the district court, have considerable sympathy for those who, through mistakes – counsel's inadvertence or their own – lose substantial rights in that way. And there is, indeed, an institutionalized but limited flexibility at the margin with respect to rights lost because they have been slept on. But the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced – where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar.

*Id.*, at 123, quoting *Silivanch*, 333 F.3d, at 367-68. *See In re Enron Corp.*, 2007 WL 610404, at *8 (Bankr. S.D.N.Y. Feb. 23, 2007) (unpublished) (Second Circuit applies "'hard line' in applying the *Pioneer* test."); *In re Enron Corp.*, 2007 WL 294114, at * 4 (Bankr. S.D.N.Y. Jan. 31, 2007) (unpublished) ("hard line"). The Second
(continued)

Here, Goodyear urged below, and the Bankruptcy Court correctly rejected, the contention

that Goodyear's confusion about the Bar Date constituted excusable neglect. In *Enron*, the

Second Circuit observed that in *Pioneer*, the Supreme Court focused on the inconspicuousness of

the bar date in a notice of commencement in that case, and "gave little weight" to the attorney's

excuse of law office disruption:

> Applying that test to the facts before it, the *Pioneer* Court allowed a claim filed
> twenty days after the bar date imposed by the bankruptcy court where the notice
> of that date consisted of a single, "inconspicuous" sentence in a document entitled
> "Notice for Meeting of Creditors.". . . . At the same time, the Court gave "little
> weight" to the explanation provided by the late-claimants' attorney who
> contended that he was "unaware" of the bar date until after it had passed because
> it "came at a time when he was experiencing 'a major and significant disruption'
> in his professional life caused by his withdrawal from his former law firm," and
> "did not have access to his copy of the case file."

*Enron*, 419 F.3d, at 122. The Second Circuit also discussed its prior case in which excusable

neglect was claimed due to reliance by the creditor's counsel on statements of counsel for

another party:

> Accordingly, in *Silivanch* we thought ourselves "compelled . . . to conclude that
> the district court abused its discretion" in finding excusable neglect where the
> basis for the claim was that the appellant's attorney had mistakenly relied "on a
> remark by counsel for another party" concerning the date by which a notice of
> appeal had to be filed.

*Id.*, 419 F.3d, at 123, discussing *Silivanch*, 333 F.3d, at 368 (other citations and a footnote

omitted). The Second Circuit in *Enron* then applied these precedents to the case before it. The

*Enron* bankruptcy cases included a multitude of debtors, including Enron and ENA. The

creditor, Midland, had filed a timely proof of claim against debtor ENA but filed a late claim

against debtor Enron as guarantor of the same obligation. The Second Circuit observed that:

"Midland's motion to amend its proof of claim indicated that its failure to file a timely claim

---

(continued)

Circuit and the United States District Court for the Southern District of New York have also referred to the Second
Circuit's "hard line" test as a "strict standard." *In re Johns-Manville Corp.*, 2006 WL 1676392, at *3 (S.D.N.Y.
June 14, 2006), *aff'd* 476 F.3d 118 (2d Cir. 2007) ("The Court of Appeals applied a strict standard in determining
what amounts to excusable neglect . . ."), *aff'd* 476 F.3d 118, 124 (2d Cir. 2007) ("The District Court, applying the
strict standard set by this Court in *Silivanch*, ruled that the neglect of Travelers' attorney was not excusable. . . .
Following *Silivanch*, the District Court correctly ruled that, absent extraordinary circumstances, attorney
inadvertence is not excusable neglect.").

against Enron "resulted solely from inadvertence," which it attributed to the fact that it and "its counsel were so heavily focused upon and involved in negotiations. . . ." *Id.*, at 126.   The Second Circuit affirmed the lower courts' rulings disallowing Midland's late claim, because Midland's contention fell short of carrying the heavy burden of proving excusable neglect. *Id.*, at 134.

Here, as in *Enron*, Goodyear's neglect was not excusable.  Appellant states that "the bar date notice in *Pioneer* was not conspicuous and was contained in a document that did not normally include bar date notices."  App. Brief, at 18, citing *Pioneer*, at 507 U.S., at 389-99. Appellant concedes, however, that here, [t]he Bar Date notice was not ambiguous.  Its fine print was carefully drafted by Debtor's counsel to include the new class of administrative expense claims, while excluding other administrative expense claims."  App. Brief, at 19 n.8.[29]

Goodyear admits that it delayed filing its Section 503(b)(9) Claims because it expected "instructions" or a "procedure" for asserting section 503(b)(9) claims; however, Goodyear was neglectful because it did not check the docket to look for an item on it containing section 503(b)(9) claim filing instructions or procedures.  It apparently chose to wait until six months after the General Bar Date – and over a year after the Filing Date, over a year after it made its Reclamation Demand, nine months after it entered into an Essential Supplier Agreement, nine months after it filed its June 30, 2006 Proofs of Claim, eight months after this Court's Bar Date Order was entered, and seven months after the Bar Date Notice was published and the Bar Date

---

[29] Appellant goes on to say that "since this distinction is new, the applicability of the bar date to Section 503(b)(9) claims should have been made more conspicuous."  In fact the only inconspicuousness that Goodyear alleged was that Section 503(b)(9) Claims were not mentioned in the *title* of the Bar Date Order. Goodyear Mem., at 6; App. Brief, at 8.  *See* App. Brief, at 8 ("it did not mention Section 503(b)(9) claims or administrative expense claims in its title . . .").  The United States Supreme Court in *Pioneer* did not find the bar date reference inconspicuous in that case because it was omitted from the title of a bar date order or notice but because the bar date was buried in a notice that would not typically include a bar date.  Here, the Bar Date Order clearly addressed bar dates and the notice sent to creditors is clearly a bar date notice with statements regarding section 503(b)(9) claims and the accompanying proof of claim form addressing section 503(b)(9) claims with a box to check on its face and related instructions.  The Bankruptcy court found that "[t]he 503(b)(9) claims . . . were clearly provided for in the Bar Date Notice.  The face of the proof of claim forms even had a separate box and box to check for section 503(b)(9) claims and accompanying instructions."  2007 WL 1577763, at *5.  The Appellant says that a special form is to be expected. App. Brief, at 7 ("Notably, in some bankruptcy cases, at a later date, a process is established for filing administrative expense claims on a specifically designated form.").

Notice Packages mailed – to check the docket. Goodyear offered no reason below as to why a docket check was being conducted at the time it did discover the Bar Date Order, other than to say its review of the docket was "routine." Goodyear Mem., at 8 and 14, *See* App. Brief, at 5 and 9.

The United States District Court for the Southern District of New York has held that a party that is anticipating an order may not use the lack of notice of the order as an excuse; it has an affirmative responsibility to check the docket, and cannot "fail to check the docket for *weeks*" (emphasis added):

> Appellant contends, as he did in seeking the extension, that the reason for the delay was the failure of the bankruptcy court to provide him with a copy of the Estimation Order. Thus, he lays the blame squarely with the bankruptcy court. (See Appeal 8 ("[T]he Court never transmitted its Order to the Appellant.").) Courts have declined to countenance such blame-shifting by litigants, who are responsible for staying abreast of the docket and forthcoming court orders. *See In re Wechsler*, 246 B.R. at 495 ("reason for delay" weighs against party where he "*failed to check the docket for weeks*"); *Crysen/Montenay Energy Co. v. Belcher Co. of N.Y.*, No. 93 Civ. 339(RPP), 1993 U.S. Dist. LEXIS 12858, 1993 WL 362360, at *3 (S.D.N.Y. September 17, 1993) ("reason for delay" weighs against party where he knew "an order was likely to be forthcoming").

*US ex rel. Grynberg v. Enron Corp. (In re Enron Corp.),* 364 B.R. 482, 487 (S.D.N.Y. Mar. 2, 2007) (emphasis added), citing *Wechsler v. Equitable Life Assurance Society*, 246 B.R. 490, 495 (S.D.N.Y. 2000).[30]

Appellant is disingenuous when it states that "nor had [Goodyear] any reason to expect an order to be entered on the docket." App. Brief, at 20. Goodyear – represented by the *same*

---

[30] *See also In re Torres*, 15 B.R. 794, 797 (Bankr. S.D.N.Y. 1981) ("It is incumbent upon creditors to follow the record for the administration of the bankruptcy estate and discover for themselves orders which they may want to challenge. Petitioner by its own admission had actual knowledge of the bankruptcy proceedings well in advance of the date set for [sic] confirmation hearing on debtors' plan. Petitioner is a sophisticated lending institution, familiar with bankruptcy proceedings. Based on the knowledge that debtors had filed a petition in bankruptcy, a prudent creditor would be put on notice to make inquiries, notwithstanding the absence of formal notice. Petitioner, without good cause shown, chose to do nothing. Where petitioner had actual knowledge and failed to act, petitioner cannot now be heard to object to the lack of formal knowledge."); *In re Nutri*Bevco, Inc.*, 117 B.R. 771, 783 (Bankr. S.D.N.Y. 1990), quoting *In re Gregory*, 705 F.2d 1118, 1123 (9th Cir. 1983) ("When the holder of a large, unsecured claim ... receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril. 'Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led. When a person has sufficient information to lead him to a fact, he shall be deemed to be conversant of it.'") (citation omitted).

counsel as Veyance in this matter – admitted it had no prior experience with section 503(b)(9) claims because they were new to the Bankruptcy Code,[31] has its own in-house and outside bankruptcy professionals whose job it is to attend to bankruptcy notices and proofs of claim,[32] had filed proofs of claim in the Cases for general unsecured claims but deliberately omitted its Section 503(b)(9) Claims from these proofs of claim for a business reason,[33] had expected section 503(b)(9) claims to be addressed at some point in the Debtors' Cases,[34] and found the bar date for section 503(b)(9) claims by examining the docket (admittedly months after such bar date had passed). Goodyear Mem., at 3, 8 and 14; App. Brief, at 5 and 9. These facts controvert a finding of excusable neglect.

As the Bankruptcy Court found:

> *Although Goodyear asserts it was waiting further instructions*, it failed to check the docket for such instructions for more than six months after the Bar Date and eight months after the Bar Date Order was entered. *See, i.e.* [sic], *Wechsler v. Equitable Life Assurance Society*, 246 B.R. 490, 495 (S.D.N.Y. 2000) (reason for delay weighs against party where he failed to check docket for weeks.). Once the Bar Date Order was entered, a simple review of the docket would have revealed the date and the type of claims that were covered. In fact, according to Goodyear such a review did finally reveal that information.

2007 WL 1577763, at 5 (citation omitted; emphasis added). While the Appellant attempts to distinguish the Bankruptcy Court's citation to *Wechsler*,[35] its holding is indeed applicable to the facts here because Goodyear was admittedly waiting for Bankruptcy Court instructions and failed to check the docket for months.

Neglect by counsel is not excusable where the circumstances were in the control of counsel as they were here. *See Duke*, 63 Fed.Appx., at 561-62 ("the delay was based on

---

[31] As the Bankruptcy Court bluntly stated: "Goodyear's argument that it should also be excused for failing to file timely because the 503(b)(9) Claims were a new breed of claim is meritless." 2007 WL 1577763, at *5.

[32] Petroff Declaration, at ¶ 2 (in-house paralegal Petroff declares that she reviews all bankruptcy notices and draft proofs of claim with an outside counsel "who maintains an office at Goodyear's Law Department one day a week."). The Bankruptcy Court found Goodyear to be "a highly sophisticated creditor who initially chose not to file its 503(b)(9) Claim for business reasons." 2007 WL 1577763, at *5.

[33] *Id.*

[34] *See id.*; Goodyear Mem., at 8.

[35] App. Brief, at 20.

circumstances within the control of her counsel. . . ."); *Seinfeld*, 2007 WL 987867, at *4 (no

excusable neglect where counsel inadvertently failed to read emails); *In re Johns-Manville*

*Corp.*, 2006 WL 1676392, at *2-*3 (S.D.N.Y. June 14, 2006) (no excusable neglect where

counsel inadvertently mis-calendared deadline; see cases cited therein);  *Accord Enron*, 364 B.R.

482, 487 (S.D.N.Y. 2007) (no excusable neglect where reason for delay was entirely within

appellant's control, and he did not check docket or take other steps that would have apprised him

of deadline).

As stated above, Goodyear expressed an expectation for "instructions" or a case

"procedure" for section 503(b)(9) claims.  Goodyear also expressed an alternate "expectation" –

that its prepetition claim would be subject to a late-in-the-case bar date for administrative

expense claims:

> In the absence of a Bar Date notice, and with the *expectation* that Section
> 503(b)(9) administrative expense claims would not be barred by an early bar date
> order, and because the format and procedure for filing Section 503(b)(9) claims
> was unsettled and unfamiliar to Goodyear, Goodyear did not file its Section
> 503(b)(9) Claim before the Bar Date.

Goodyear Mem., at 8 (emphasis added).[36]

Goodyear's expectation was not reasonable or well-founded.  Section 503(b)(9) claims,

which are for goods delivered to the debtor in the 20 days preceding the Filing Date, are

unquestionably claims against a debtor that accrued *prepetition* and were readily determinable

and calculable as of the Filing Date.  In contrast, *postpetition* administrative expenses are

incurred by a trustee or debtors in possession on behalf of a chapter 11 estate after the filing date

---

[36] *Id.* "Goodyear . . . did not anticipate a bar date for its administrative expense claim based on prior practice, in which administrative expense claims were not barred by general claims bar dates or, indeed, by *any* bar date in the early stages of a chapter 11 case.  Goodyear had no prior experience regarding the administration of Section 503(b)(9) claims, which only arose in case filed after October 17, 2005 under BAPCPA." *Id.*, at 14 (emphasis in original).  "The novelty of the new law and uncertain procedures for dealing with prepetition administrative expense claims precluded Goodyear from anticipating that a bar date would even apply to Section 503(b)(9) Claims. *Id.*, at 16.  "In the absence of a Bar Date Notice, and with the expectation that Section 503(b)(9) administrative expense claims would not be barred by an early bar date order, and because the format and procedure for filing Section 503(b)(9) claims was unsettled and unfamiliar to Goodyear, Goodyear did not file its Section 503(b)(9) Claim before the Bar Date." *Id.*, at 8. *See* App. Brief, at 9-10. "Goodyear was uncertain of the procedure that would be provided for filing Section 503(b)(9) administrative expense claims.  Indeed, Goodyear *expected* that such claims would be administered in the same fashion as postpetition administrative expense claims." *Id.*, at 5 (emphasis added).

and accrue over the course of the case.  If postpetition administrative expense claims are subject

to a bar date, it must be late in the case to be meaningful.  Section 503(b)(9) claims, on the other

hand, are prepetition claims that have been granted a particular priority, which happens to be the

same priority as postpetition administrative expense claims.[37]  Their priority, however, does not

convert them into postpetition claims warranting a late-in-the-case bar date.  It is more

reasonable to assume that as prepetition claims, they would be subject to an early bar date for

prepetition claims.

Goodyear, however, chose to rely on its erroneous assumption that the applicable bar date

would be late in the case.  The Second Circuit has held that reliance on such an erroneous

assumption is not excusable neglect.  *Enron*, 419 F.3d, at 127 ("Midland's contention that it

'mistakenly rel[ied] on the . . . anticipated substantive consolidation' of the Enron bankruptcies

is inconsistent with its claim of inadvertence insofar as it suggests a 'conscious, tactical decision'

to file a single claim on the basis of what turned out to be an erroneous assumption.") (citations

omitted; *see* cases cited therein).

Why would Goodyear choose to rely on its assumption, rather than just file a proof of

claim or at least confirm its "expectation" that its unasserted *prepetition* claims would be subject

to a bar date for *postpetition* claims?  Something else drove Goodyear.

Goodyear readily admits that it could have included its Section 503(b)(9) Claims in its

timely filed proofs of claim but did not do so because of a business reason – the market for

section 503(b)(9) claims was not "attractive" at the time it sold its general unsecured claims to JP

Morgan.  2007 WL 1577763, at *5.  Unfortunately for Goodyear, it is not excusable neglect to

choose not to file a claim for a business reason.  *See In re New York Seven-Up Bottling Co., Inc.*,

153 B.R. 21, 23 (Bankr. S.D.N.Y. 1993) (claims expunged as late-filed: "The claimants in the

instant case deliberately chose not to file proofs of claim because they assumed that there claims

---

[37]  The Appellant calls the administrative expense priority a "post-petition priority."  Neither section 503 nor 507 of
the Bankruptcy Code, however, calls the administrative expense priority a postpetition priority, and section
503(b)(9) claims by the terms of that subsection accrue prepetition.  11 U.S.C. §§ 503, 507.

were not disputed.").

Goodyear's "reason for delay" is therefore not an excuse for its neglect; rather, it appears to have delayed filing a claim deliberately.

This is not a close case. Goodyear had utterly failed to meet its burden of establishing excusable neglect under the *Pioneer* standard, as to which courts in this Circuit take a "hard line." Its reason for delay – the principal factor examined by Courts in the Second Circuit – is insufficient to excuse its neglect under the strict standard of the Second Circuit's "hard line" test. The Bankruptcy Court correctly determined that Goodyear failed the "reason for delay" test. The Memorandum Decision should, therefore, be affirmed.

**D.    The Bankruptcy Court was Correct in Finding that the Debtors Would Be Prejudiced by An Enlargement of Time For Appellant to File its Section 503(b)(9) Claims.**

Goodyear's section 503(b)(9) claim is for approximately $1.4 million, which if allowed as an administrative priority claim would be payable in full in cash by the Debtors. This is a substantial sum of money. The estates and their other creditors would be prejudiced by allowance at this late date, as well as the potential floodgate of other large claims that might be asserted belatedly as well.

Goodyear claims lack of prejudice because it says that the Debtors knew of its Section 503(b)(9) Claims. Neither the scheduling of a claim nor a reservation of rights, however, is enough to permit the late filing of a claim; a proof of claim must be timely filed.[38] Here, it was

---

[38] *See In re Enron Corp.*, 2007 WL 610404, at *2 and *7 (Bankr. S.D.N.Y. Feb. 23, 2007) (unpublished) (late-filed claim against Enron barred even though the claim was scheduled, creditor filed proof of claim against another debtor, listed the case name and number of Enron in the filed claim's caption, and attached to it an unsigned copy of the guaranty on which its late-filed claim against Enron is based; "the Court concludes that the amendment should still not be permitted under the second prong, a similar equitable determination made in finding no excusable neglect below. In particular, the Court emphasizes that the Debtors would be unduly prejudiced due to the possibility of other similarly situated creditors coming forward to amend their claims or file late claims.") (citation omitted). *See In re Enron Corp.*, 2007 WL 294114, at *7 (Bankr. S.D.N.Y. Jan. 31, 2007) (unpublished) ("Enron properly scheduled Spinnaker as an unsecured creditor having a 'contingent' and 'unliquidated' claim on the Guaranty, and Spinnaker should have filed a separate proof of claim if it sought to hold Enron liable. Therefore, Spinnaker's informal proof of claim argument fails."), citing *In re The Drexel Burnham Lambert Group Inc.*, 129 B.R. 22, 27 (Bankr. S.D.N.Y. 1991) ("[M]ere awareness by the debtor of a creditor's claim through general correspondence is insufficient to establish an informal proof of claim.").

not a scheduled claim. Rather, it was only referenced generally in the Essential Supplier

Agreement that Goodyear claimed to have a section 503(b)(9) claim in an unspecified amount –

and under the Essential Supplier Agreement, that claim, if any, was expressly subject to all

defenses of the Debtors, which would include disallowance as an untimely filed claim.

Significantly, the prejudice to the estates and other creditors goes beyond any dispute

between the parties to the contested matter initiated by the Motion. The District Court has

recently held:

> In rejecting this argument, the bankruptcy court correctly pointed out that the
> relevant prejudice is not the prejudice resulting from an appeal being filed, but
> rather the added prejudice from the late filing of the appeal. (Appeal Extension
> Order 9.) However, the bankruptcy court found another type of prejudice that
> would result from permitting a late appeal to be filed. There were over 25,000
> claims filed in debtors' bankruptcy, of which over 15,800 were disallowed. The
> bankruptcy court found that if it allowed a late appeal based solely on the lack of
> knowledge that an order had been entered, it would open the door for any number
> of the disallowed claimants to argue that they simply did not know an order had
> been entered disallowing their claims. *See Midland Congeneration Venture Ltd.*
> *P'ship v. Enron Corp. (In re Enron Corp.),* 419 F.3d 115, 130 (2d Cir. 2005)
> (considering "whether allowing a late appeal would be likely to precipitate a flood of
> similar claims"). While the Court recognizes that such prejudice to debtors is
> inherently speculative, appellant has not offered any evidence countering such a
> possibility. The Court cannot say that the bankruptcy court abused its discretion
> in finding that the possibility of a flood of challenges based on a failure to receive
> orders constitutes prejudice to the debtors.

*US ex rel. Grynberg v. Enron Corp. (In re Enron Corp.),* 364 B.R. 482, 486-87 (S.D.N.Y. Mar.

2, 2007). *See In re Enron Corp.,* 2007 WL 610404, at *9 (Bankr. S.D.N.Y. Feb. 23, 2007)

(unpublished), quoting *Keene,* 188 B.R,. at 909 ("question[ed] the wisdom of an approach under

which the court must ultimately ignore the creditor's culpability and permit the filing of a late

claim if prejudice is absent."); *See In re Enron Corp.,* 2007 WL 294114, at * 5 (Bankr. S.D.N.Y.

Jan. 31, 2007) (unpublished) (same quote from *Keene*).

Here, the Debtors' estates and their creditors would be prejudiced by permitting

Goodyear to assert its $1.4 million claim as an administrative priority claim. Additionally, as the

Bankruptcy Court found,[39] enlarging time to permit Goodyear's late claim could open the

---

[39] 2007 WL 1577763, at *6 ("Granting the requested relief . . . would set an untenable precedent and would likely
precipitate a flood of similar claims").

floodgate for other claimants in these Cases. It is not unusual in bankruptcy cases for some

creditors who are situated similarly to others to think of themselves as unique. Goodyear,

however, is not unique and a reversal of the Memorandum Decision would likely incentivize

other holders of late filed claims to seek to have their claims allowed. It is also possible that

precedent in these Cases could be used in an attempt to open the floodgates in other bankruptcy

cases.

E.     **The Bankruptcy Court was Correct in Finding that the Length of Goodyear's Delay in Filing Its Section 503(b)(9) Claim Was Too Long To Warrant A Finding Of Excusable Neglect.**

The Bankruptcy Court set the bar date for section 503(b)(9) claims to facilitate the

formulation of a chapter 11 plan:

> While the Debtors have not yet filed their plan, the process is well underway in light of the stringent time lines under BAPCPA. The strict bar date provided by this Court was intended, in part, to facilitate the equitable and orderly intake of claims and enable the Debtors to understand the universe of liabilities in connection with plan negotiations and formation.

2007 WL 1577763, at *5.[40]

As quoted above, the Bankruptcy Court views its bar date as "strict." *Id.* Goodyear

missed the General Bar Date by six months.

In *Enron*, the Second Circuit found a six month delay to be too long for excusable neglect

when weighing it against the other *Pioneer* factors. *Enron*, 419 F.3d, at 120 and 127-30.[41] Here,

the six month delay should be considered excessive as well, as all Goodyear need have done is to

have filed its section 503(b)(9) claims with its other claims (which were timely flied), paid

attention to the Bar Date Notice and/or have checked the docket.

It flies in the face of the facts for Appellant Veyance to say that Goodyear did not sleep

---

[40] We note that since this decision, the Debtors have filed their plan of reorganization.
[41] The "length of delay" test is qualified by the "reason for delay" test in the Second Circuit:
> Absent a sufficient reason for its delay, the fact that the delay and prejudice were minimal would not excuse MetLife's mere inadvertence.

*Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 229 (2d Cir. 2004).

on its rights,[42] when it did.  Goodyear's failure to timely file its Section 503(b)(9) Claims was deliberate and furthered a calculated business decision.  If Goodyear's untimely claims were permitted to be filed late, Goodyear's delay would prejudice the Debtors' estates by making other creditors ultimately pay Appellant Veyance for Goodyear's inaction or worse still, Goodyear's calculated maneuvering for a market advantage.  Veyance wishing that Goodyear had taken a different approach is simply not grounds for reversal.  Accordingly, the Memorandum Decision should be affirmed on this point as well.

---

[42]  App. Brief, at 24 ("A six month delay caused by the fact that the bar date notice was never received should be viewed in a different light than a case where a creditor merely slept on its rights.").

## CONCLUSION

WHEREFORE, Appellee respectfully requests that the Court: (a) enter an Order affirming the Bankruptcy Court's Memorandum Decision for the reasons set forth therein and in this Appellee's Opening Brief; and (b) grant such other and further relief as this Court may deem proper.

Dated:    October 3, 2007                    PACHULSKI STANG ZIEHL & JONES LLP


                                             By    */s/ Robert J. Feinstein*
                                                   Dean A. Ziehl (DZ-6154)
                                                   Robert Feinstein (RF-2836)
                                                   Debra Grassgreen (CA Bar No. 169978)
                                                   Robert Saunders (RS-9999)
                                                   Beth E. Levine (BL-6715)
                                                   780 Third Avenue, 36th Floor
                                                   New York, NY  10017-2024
                                                   Telephone: 212.561.7700
                                                   Facsimile:  212.561.7777

                                                   Conflicts Counsel for Appellee
                                                   DANA CORPORATION, et al.