BROUSE McDOWELL L.P.A.
1001 Lakeside Avenue, Suite 1600
Cleveland, Ohio 44114
Telephone:  (216) 830-6830
Facsimile:  (216) 830-6807
Marc B. Merklin  (MM8195)
Alan M. Koschik  (AK5891)

HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, New York  10016
Telephone:  (212) 592-1400
Facsimile:  (212) 592-1500
Joshua J. Angel (JA-3288)
Paul Rubin (PR-2097)

Attorneys for Appellant,
Veyance Technologies, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                                          :
                                                                :
    DANA CORPORATION, *et al.*,                        :
                                                                :
               Debtors.                         :
                                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                :
    VEYANCE TECHNOLOGIES, INC.,                         :
    assignee of The Goodyear                            :
    Tire & Rubber Company,                              :    Case No. 07-CV-06169 (DAB)
                                                                :
               Appellant,                       :    (Bankruptcy Appeal)
                                                                :
vs.                                                             :    Judge Deborah A. Batts
                                                                :
    DANA CORPORATION, *et al.*,                        :
                                                                :
               Appellee.                        :
                                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## **<u>REPLY BRIEF OF APPELLANT VEYANCE TECHNOLOGIES, INC.</u>**

# TABLE OF CONTENTS

**Page**

OVERVIEW ……………………………………………………………………………..1

THE BANKRUPTCY COURT WRONGLY CONCLUDED THAT THE APPELLANT
FAILED TO REBUT THE PRESUMPTION THAT IT HAD RECEIVED NOTICE OF THE
BAR DATE ……………………………………………………………………………….2

The Bankruptcy Court Applied a Legal Standard for Rebutting Presumptions that Is
Inconsistent with Rule 301 of the Federal Rules of Evidence and Applicable Law ………….2

To The Extent that the Bankruptcy Court Disregarded the Appellant's Uncontested Evidence
of Business Records and Internal Procedures for Handling Bankruptcy Notices, the
Bankruptcy Court Erred In Doing So Without an Evidentiary Hearing ……………………..4

THE CIRCUMSTANCES OF THE APPELLANT'S CLAIM IN THIS CASE WARRANT A
FINDING OF EXCUSABLE NEGLECT AND AN ENLARGEMENT OF TIME TO FILE
PURSUANT TO RULE 9006(b) …………………………………………………………7

The Reasons for Appellant's Delay In Filing Its Section 503(b)(9) Claims Warrant a Finding
of Excusable Neglect ……………………………………………………………….8

The Debtors Would Not Be Prejudiced if Appellant Were Granted More Time To File Its
Section 503(b)(9) Claims…………………………………………………………….13

Appellant's Delay in Filing Its Section 503(b)(9) Claims Was Not Unreasonable ……..….15

CONCLUSION …………………………………………………………………………18

# TABLE OF AUTHORITIES

**Cases**

*North American Car Corporation v. Peerless Weighing & Vending Corp.*, 143 F.2d 938, 940-41 (2d Cir. 1944) ........................................................................................................... 6

*Blaise v. Wolinsky (In re Blaise),* 219 B.R. 946, 949 (2d Cir. BAP 1998) .................................. 8

*In re Borchert*, 143 B.R. 917, 920 (Bankr. D.N.D. 1992) ........................................................... 6

*In re Cassell*, 206 B.R. 853, 857 (Bankr. W.D. Va. 1997) .......................................................... 4

*In re Dana Corporation*, 367 B.R. 409, 411-12 (Bankr. S.D.N.Y. 2007) ................................. 14

*In re Dodd*, 82 B.R. 924, 928 (N.D. Ill. 1987) ............................................................................ 4

*In re Enron Corp.*, 2003 W.L. 21756785 at *5 (Bankr. S.D.N.Y. July 30, 2003) ...................... 16

*In re Enron Corp.*, 419 F.3d 115 (2nd Cir. 2005) ...................................................................... 17

*In re Enron*, 2003 WL 21756785 at *6 (Bankr. S.D.N.Y. July 30, 2006) ........................... 5, 16

*In re Enron*, 419 F.3d 115, 128-29 (2d Cir. 2005) .................................................................... 18

*In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995) ................................................ 16

*In re Khachikyan*, 335 B.R. 121, 125-26 (9th Cir. BAP 2005) ................................................... 8

*In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 128 (3d Cir. 1999) ......................... 15

*In re Papp International*, *Inc.*, 189 B.R. 939 (Bankr. D. Neb. 1995) ................................. 15, 18

*In re R.H. Macy & Co.*, 166 B.R. 799, 802 (S.D.N.Y. 1994) ................................................... 15

*In re Williams*, 185 B.R. 598, 600 (9th Cir. B.A.P 1995) ........................................................... 6

*Linder v. Trump's Castle Assocs.*, 155 B.R. 102, 108 n. 10 (D.N.J. 1993) ............................... 18

*n re Thomson McKinnon Securities, Inc.*, 159 B.R. 146, 148 (Bankr. S.D.N.Y. 1993) .............. 18

*Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993) .................................................................................................................. 10

**Other Authorities**

J. Weinstein & M.A. Berger, *Weinstein's Federal Evidence* § 301.02 [3][c] (2d ed. 2007) .......... 4

Ryan Routh, *"Twenty-Day Claims:" The Anticipated and Unanticipated Consequences of Code § 503(b)(9)*, ABI Journal, Vol. XXV, No. 9, p. 24, Nov. 2006 .............................................. 13

**Rules**

Fed. R. Bank. P. 9014(d) ............................................................................................................ 8

Fed. R. Evid. 301 ........................................................................................................................ 4

**OVERVIEW**

Appellant did not receive the Debtors' bar date notice (the "Bar Date Notice") and, as a result, did not timely file its prepetition administrative expense claims for the sale of goods delivered to the Debtors within the 20 days prior to their bankruptcy filing (the "Section 503(b)(9) Claims"). The Bankruptcy Court erred as a matter of law when it held that the Appellant's evidence did not rebut the presumption that the Bar Date Notice had been served on the Appellant. The Bankruptcy Court also erred by rejecting the Appellant's uncontested evidence without an evidentiary hearing. Failure of notice was a justifiable reason for the Appellant's failure to file its Section 503(b)(9) Claims before the Bar Date and supports a finding of excusable neglect that would justify enlargement of time under Rule 9006(b) to file those claims.

In addition, even if the Appellant were presumed to have received the Bar Date Notice, the Bankruptcy Court erred when it denied the Appellant's Rule 9006(b) motion. The novelty of the new Section 503(b)(9) Claims, the manner in which administrative claims had previously been administered, and the inadequacy of the Bar Date Notice itself with respect to Section 503(b)(9) Claims, provides an independent and sufficient reasons for the Appellant's delay in filing its claims. The Bankruptcy Court committed error in finding to the contrary. The Bankruptcy Court also erred by finding, without any evidence that the Debtors would be prejudiced by treating the Section 503(b)(9) Claims as timely filed or that the delay in their filing was too long to warrant a finding of excusable neglect. For these reasons, the Memorandum Decision of the Bankruptcy Court should be reversed.

I.   **THE BANKRUPTCY COURT WRONGLY CONCLUDED THAT THE APPELLANT FAILED TO REBUT THE PRESUMPTION THAT IT HAD RECEIVED NOTICE OF THE BAR DATE.**

   A.   **The Bankruptcy Court Applied a Legal Standard for Rebutting Presumptions that Is Inconsistent with Rule 301 of the Federal Rules of Evidence and Applicable Law.**

The Bankruptcy Court imposed a legal standard that is more stringent than the Federal Rules of Evidence permit for rebutting legal presumptions. Rule 301 of the Federal Rules of Evidence provides that:

> [A] presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not to shift to such party the burden of proof in the sense of risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

Fed. R. Evid. 301; *In re Dodd*, 82 B.R. 924, 928 (N.D Ill. 1987). The party attempting to rebut a presumption is not required to prove a negative, such as affirmatively proving that the Debtor did not mail the Bar Date Notice to the Appellant, but rather need only introduce competent evidence that would support such a finding. *Dodd,* at 928-291; J. Weinstein & M.A. Berger, *Weinstein's Federal Evidence* § 301.02 [3][c] (2d ed. 2007). This rule is fairly employed by cases such as *Dodd*[1] and *In re Cassell*, 206 B.R. 853, 857 (Bankr. W.D. Va. 1997) in the context of the presumption that mailed notices are presumed received. Those cases held that evidence of business records maintained in the ordinary course of business demonstrating that notices were not received are sufficient to rebut the presumption of delivery. Similarly, in *In re Enron*, 2003 WL 21756785 at *6 (Bankr. S.D.NY, 2006), the Bankruptcy Court for Southern District of New York observed that had such business record evidence been presented in that case, the presumption of delivery would have been overcome.

---

[1] Debtor attempts to dismiss *Dodd* by noting immaterial distinctions, such as the bankruptcy chapter in which it was filed and the fact that it concerned a due process issue instead of excusable neglect under Rule 9006. Appellee's Brief at 16 n.19; Appellant's Brief at 13 n.6. Notwithstanding the Debtors' attempt to push it aside, *Dodd* does deal

There is no question that "mere denials" of receipt are not sufficient to rebut the legal presumption. The Debtors unfairly and inaccurately attempt to shoehorn Appellant's testimony into this rubric. The Court should reject this characterization. Without belaboring the Debtors' second-guessing of Appellant's testimony or its internal mail procedures, the Court should take note of one of the Debtors' reoccurring exaggerations in its briefs: that Appellant "did *nothing* to rebut the presumption of delivery, instead proffering declarations stating merely that . . . [Appellant] had not received the Bar Date Notice." Appellee's Brief at 11. This is a self-serving mischaracterization of the record and attempts to conform the facts of this case to those other cases in which "mere denials" of receipt are found to be insufficient to rebut the presumption of delivery. Appellant introduced testimony of its business records maintained to record service of bankruptcy notices, identified the specific individuals who maintained files for bankruptcy cases, including the Debtors' cases, and demonstrated that those records established the lack of delivery of the Bar Date Notice in question. The Debtors' exuberant advocacy should not diminish the weight of the Appellant's evidence or transform it into something that is not. Under the correct legal standard, Appellant's evidence clears the bar and compels a finding that the presumption of delivery was rebutted and does not constitute a mere self-serving denial that should be disregarded.

The Bankruptcy Court relies on cases that require actual evidence that the other party (the Debtors in this case) did not mail the notice. Memorandum Decision at 9 (*citing In re Bucknum*, 951 F.2d 204, 207 (9th Cir. 1991); *In re Williams*, 185 B.R. 598, 600 (9th Cir. B.A.P 1995)). Taken literally, this standard would make the legal presumption practically irrebuttable and, therefore, is inconsistent with F.R.E. 301, which only switches the burden of going forward, not

_____

directly with the question of how a creditor can rebut the presumption that a mailed notice was received. Therefore, it is directly on point.

3

the burden of ultimate persuasion, to the party attempting to rebut the presumption.  The Bankruptcy Court's legal standard is, therefore, in error.

The Bankruptcy Court also relied on cases from other eras, such as *North American Car Corporation v. Peerless Weighing & Vending Corp.*, 143 F.2d 938, 940-41 (2d Cir. 1944), and dramatically smaller cases, such as *In re Borchert*, 143 B.R. 917, 920 (Bankr. D.N.D. 1992), for the proposition that the failure of multiple mailings to arrive must suggest a failure at the recipient's office rather than at the sender's.  Memorandum Decision at 10.  These cases are not relevant to the present case.  While the cases cited by the Court and the Debtors concerned a handful of duplicate mailings that are attested to by their sender, almost certainly with personal care, this case is a mega-case involving (with respect to the Bar Date Notice in question) service by automated systems to hundreds of thousands of creditors.  The Bankruptcy Court should not have been so quick to assume infallibility on the part of the these complex systems, especially where Appellant had introduced legally sufficient evidence to rebut the presumption that the notices were delivered.  The Debtors rely here upon a single affidavit of service that is hundreds of pages long, attests to service to hundreds of thousands of creditors, and clearly does not represent the personal knowledge of the sole individual who signed it.  It is physically impossible for one human being to have personal knowledge of such a massive, week-long mailing.

The District Court should find that the Bankruptcy Court employed an impermissible standard for rebutting the legal presumption in this case and that the Appellant's evidence did, in fact, rebut the presumption that the Bar Date Notice was received by Appellant.

> **B.    To The Extent that the Bankruptcy Court Disregarded the Appellant's Uncontested Evidence of Business Records and Internal Procedures for Handling Bankruptcy Notices, the Bankruptcy Court Erred In Doing So Without an Evidentiary Hearing.**

The Debtors claim that the Appellant's evidence regarding its business records, which demonstrate that the Bar Date Notice was not received, was uncontested (but allegedly legally insufficient) and that therefore no evidentiary hearing was necessary. *See* Appellee's Brief at 20. If the Debtors' assessment of the Memorandum Decision is true in this respect, the Debtors would be correct that no evidentiary hearing would be required. For the reasons set forth in Section I.A., *supra*, Appellant's uncontested evidence regarding lack of delivery of the Bar Date Notice was sufficient to rebut the presumption that the notice was delivered once the proper legal standard is applied.

However, the Memorandum Decision is far from clear that the Bankruptcy Court accepted the Appellant's evidence as undisputed. The Bankruptcy Court held, notwithstanding Appellant's substantial record evidence that the Bar Date Notice was not received, that it found such testimony "incredulous" and that the notices must be deemed to have arrived. Memorandum Decision at 10. The Court appears to rule that it does not believe the uncontested evidence of the Appellant, not that the evidence is legally insufficient – even if true – to rebut the presumption.

To the extent the Bankruptcy Court weighed the evidence and found that it was unbelievable, it committed reversible error when it failed to conduct an evidentiary hearing. Unless it accepted the uncontested evidence as true, under applicable authority the Bankruptcy Court was required to hold an evidentiary hearing prior to making its factual finding. In other words, even if the evidence Appellant submitted below were viewed most favorably from the Debtors' perspective, Appellant was at least entitled to an evidentiary hearing to resolve the factual dispute.

Appellees attempt to distract the Court from the relevant analysis by focusing on cases and rules that simply do not apply. For example, Appellees cite to Rule 9017 of the Bankruptcy Rules, which incorporates Rule 43 of the Federal Rules of Civil Procedure, for the proposition that the Bankruptcy Court could hear the Motion solely on affidavits. While Appellees' recitation of Rule 43(e) is technically correct, it does not in any way address the interplay between that rule and Rule 9014(d).

As set forth in detail in Appellant's Opening Brief, Rule 9014(d) expressly requires the bankruptcy court to conduct a trial when there is a genuine factual dispute. *See* Fed. R. Bank. P. 9014(d); *see also In re Khachikyan*, 335 B.R. 121, 125-26 (9th Cir. BAP 2005). Notably, Appellees' brief is devoid of any reference to Rule 9014(d). The fact is, Appellees can make no cognizable argument (nor do they attempt to make such argument) as to why Rule 9014(d) does not mandate the Bankruptcy Court to conduct an evidentiary hearing in this matter.

The case law cited in Appellees' brief is similarly inapplicable. Appellees rely primarily upon the case of *Blaise v. Wolinsky (In re Blaise),* 219 B.R. 946, 949 (2d Cir. BAP 1998). *Blaise* concerned an appeal over a bankruptcy court's failure to conduct an evidentiary hearing prior to ruling on a motion to convert the Debtors' chapter 13 case to chapter 7. The bankruptcy appellate panel affirmed the bankruptcy court's ruling, finding that a court may resolve contested matters solely on the basis of the papers before the court, including affidavits. *Id.*

Appellees' reliance on *Blaise* is inappropriate for two reasons. First, the factual predicate upon which the panel based its ruling in *Blaise* is materially different from the facts before this Court. In *Blaise*, the debtor-appellant did not contest the factual issues which formed the basis for the bankruptcy court's decision to convert the case. *Id* at 948. Here, the parties' vehemently

6

dispute the central factual issue in this matter - whether Appellant did or did not receive the bar date notice.

Further, *Blaise* was decided in 1998, prior to the 2002 amendment of Rule 9014. In 2002, Rule 9014 was amended to clarify that if a motion cannot be decided without resolving a disputed material issue of fact, an evidentiary hearing must be held. *See* Notes of Advisory Committee to Rule 9014, Fed R. Bankr. P. 9014. To the extent the debtor in *Blaise* had contested that factual allegations made by the movant in support of the motion to convert the case, Rule 9014, as amended, would have required that the bankruptcy court conduct an evidentiary hearing to parse out those allegations. For these reasons, *Blaise* is not instructive in this case.

Appellant does not suggest that a bankruptcy court is required to conduct an evidentiary hearing in every contested matter. Rather, Appellant asserts that the Federal Rules of Bankruptcy Procedure and applicable case law require bankruptcy courts to conduct an evidentiary hearing to take testimony from witnesses only in limited circumstances, in particular where a motion cannot be decided without resolving a disputed material issue of fact. *Id.* Before Appellant's evidence of its internal procedures for recording bankruptcy notices could be rejected as unbelievable or insubstantial, the Bankruptcy Court was required to conduct and evidentiary hearing. Its failure to do so constitutes reversible error.

## II.  THE CIRCUMSTANCES OF THE APPELLANT'S CLAIM IN THIS CASE WARRANT A FINDING OF EXCUSABLE NEGLECT AND AN ENLARGEMENT OF TIME TO FILE PURSUANT TO RULE 9006(b).

Even if Appellant had received the Bar Date Notice – or, more accurately, even if it is legally presumed to have received the Bar Date Notice – the undisputed circumstances in this case compel the conclusion that Appellant is entitled to a finding of excusable neglect and an enlargement of time to file its Section 503(b)(9) Claims.

A.    **The Reasons for Appellant's Delay In Filing Its Section 503(b)(9) Claims Warrant a Finding of Excusable Neglect.**

This case is analogous to *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), where the United States Supreme Court found excusable neglect in a case where a creditor failed to file a claim on time, even though the creditor had received the notice of a bar date and that notice was unambiguous.  In *Pioneer*, the bar date notice was contained in an initial notice that a chapter 11 case had been filed – an unusual place for a chapter 11 bar date to be noted.  The reference to the Bar Date was unambiguous, but not conspicuously noted on the document.

In the present case, a new class of vendor claims had recently been given administrative expense priority, claims that vendors such as Appellant have traditionally equated to its postpetition sales to a chapter 11 debtor-in-possession that are administered without a formal claim process.  In this context, the Bar Date Notice, even if received, would not have been expected to concern such administrative claims.  In fact, the Debtors excluded administrative expense claims from the Bar Date, making a narrow exception only for Section 503(b)(9) Claims.  That exception is not prominently noted in the Bar Date Notice, appearing only in pages 2, 4, and 5 and buried within lengthy paragraphs without any conspicuous headings.  The application of the Bar Date to Section 503(b)(9) Claims is not prominently displayed anywhere in the Bar Date Notice, including the title.  Even a review of the docket sheet in this case does not reveal the existence of a Section 503(b)(9) Claim Bar.  In what is perhaps the first mega-case filed under BAPCPA, the 2005 Congressional act that added Section 503(b)(9) to the Bankruptcy Code, the Debtor did not bother to draw the attention of its vendors of goods to the fact that their new class of claims would be subject to an unprecedented and surprising deadline.  Indeed, because the Section 503(b)(9) Claims were afforded the same treatment as postpetition

administrative expense claims, it was natural for creditors to expect that Section 503(b)(9)

Claims would be administered in the same manner, and with the same bar date, as other

administrative expense claims.

Just as in *Pioneer*, a confluence of peculiar events and a notice not well designed to draw

attention to one of its unusual purposes is the cause for the Appellant's late filing and should be

held to be an adequate justification for an excusable neglect finding under the unique facts and

circumstances of this case.

Debtors' attempt to distinguish *Pioneer* misses the mark.  The Debtor notes that *Pioneer*

relied on the lack of conspicuousness (which is exactly Appellant's argument here), and that the

Supreme Court rejected an argument based on the creditor's attorney's "law office disruption."

Appellee's Brief at 25.  The Debtors then proceed, with sleight of hand, to equate the law office

disruption in *Pioneer* with Appellant's surprise in this case in the manner in which the new class

of claims created by the new statute was administered.  That surprise is not analogous to office

disruption, but rather to the unanticipated circumstances in *Pioneer* of a claim deadline oddly

contained in a notice of a chapter 11 case.  The trap for the unwary in *Pioneer* applies by analogy

to this case.  By contrast, the law office disruption argument is as factually inapplicable here as it

was legally irrelevant in *Pioneer*.

Debtors also confuse a lack of conspicuousness with ambiguity.  *See* Appellee's Brief at

26.  Debtors note that in *Pioneer* the holding was grounded on the fact that the Bar Date Notice

was not conspicuous.  It then states that the Appellant in this case "concedes" that the notice

provided here was not ambiguous.  To be unambiguous means that the meaning of the document

can be conclusively ascertained upon inspection.  To be inconspicuous, however, means that the

notice would not be expected to draw a reasonable person's attention to a key fact.  The notice in

*Pioneer* was unambiguous, yet not conspicuous; similarly; Debtors' notice in this case was unambiguous and not conspicuous. Despite Debtors' strained attempts to distinguish it, *Pioneer's* holding applies directly to the facts of this matter, regardless of whether or not the Bar Date Notice should be deemed to have been delivered to the Appellant.

The Debtors continue to argue here, as they did before the Bankruptcy Court, that the Appellant was duty bound to check the court docket for the Bar Date Notice and that its failure to do so is fatal. The Bankruptcy Court made a similar conclusion in its Memorandum Decision , Memorandum Decision at 11. These issues are thoroughly addressed in Appellant's Opening Brief. *See* Appellant's Brief at 19-21. However, the Court should also recall that the Appellant is and was at all times a vendor continuing to do business with the Debtors pursuant to an essential supplier agreement in which the Section 503(b)(9) Claims were noted. It reasonably expected that all administrative expense claims for the sale of goods to the Debtor-in-Possession would be maintained on open account, like all other claims for goods sold to debtors-in-possession in good faith. There was no reason for Appellant, which had filed its unsecured claims, to watch for a general bar date.

Moreover, as noted above, the title of the Bar Date Notice did not even mention Section 503(b)(9) Claims or other administrative expense claims, nor did the docket contain any notation or indication that the Bar Date Notice affected such claims. Any creditor that reviewed the electronic docket would only have noted a general bar date, which it would not have expected to apply to administrative expense claims. There are currently in excess of 6,600 entries in the Bankruptcy Court docket in this case, and there were more than 2,070 entries when the Bar Date was set. The Debtors essentially argue that every creditor, even those that are not actively involved with the case on a day-to-day basis, must be deemed to be on notice not only of every

entry (i.e. document title) in the docket, but every sentence of thousands of pleadings, and are required to inspect them all to ensure that they would not curtail their claims.  To place such a burden on all creditors is unreasonable and the Court should reject this argument.

The Debtors also take every opportunity to refer to the Section 503(b)(9) Claims as merely "prepetition" claims, not administrative expense claims.  Of course, these new claims are hybrids and have both characteristics.  Temporally, Section 503(b)(9) Claims relate to the prepetition extension of credit.  But, more significantly, they are afforded treatment identical to postpetition administrative expense claims.  However, the significance of BAPCPA's adoption of Section 503(b)(9) was that the treatment of certain claims, those for the sale of goods delivered during the 20 days prior to the bankruptcy filing, had *changed* and had become administrative expense claims.  Therefore, Appellant, had every reason to expect that these claims would be administered differently than before.  Indeed, the standard proof of claim form, Official Bankruptcy Form No. 10, expressly excludes administrative expense claims and does not allow for Section 503(b)(9) Claims.

Moreover, even after the bar date, one of the Debtors' own attorneys published an article that discussed the procedural and administrative uncertainties posed by the new class of Section 503(b)(9) claims.  *See* Ryan Routh, *"Twenty-Day Claims:" The Anticipated and Unanticipated Consequences of Code § 503(b)(9)*, ABI Journal, Vol. XXV, No. 9, p. 24, Nov. 2006 (attached hereto as Exhibit A and in the record as Exhibit A to Appellant's Reply Brief in the Bankruptcy Court).  In a section entitled "How is a Twenty-Day Claim Asserted?", Mr. Routh observes:

> "[T]here are two distinct methods by which claimants must assert post-petition administrative claims and pre-petition claims.  The new Twenty-Day Claim is a hybrid of both: it is a pre-petition claim which is given priority for payment purposes.  Yet, BAPCPA does not clearly define the appropriate procedure to be followed to assert such claims."

Open questions about these claims, including how they would be asserted, have also been noted by the Bankruptcy Judge in an opinion in this very case. *In re Dana Corporation*, 367 B.R. 409, 411-12 (Bankr. S.D.N.Y. 2007). It is clear that these new claims posed many open questions and uncertainties that Debtors' counsel now prefers to ignore.

Finally, the Debtors (and the Bankruptcy Court in its Memorandum Decision) suggest that the Appellant invited its trouble because it knowingly acted for "business reasons." These observations are clearly erroneous. There is no evidence in the record that the Appellant sought some business or other advantage by not filing a claim. Indeed, the difficulty of obtaining an excusable neglect finding and an enlargement of time pursuant to Rule 9006(b) is well known. There could not be any advantage derived from being forced to go through this legal gauntlet to obtain an order determining that an untimely claim should be deemed timely filed.

The Debtors' and the Bankruptcy Court's statements on this point are apparently based on the Appellant's honest explanation that it chose to sell its unsecured claims but not its more valuable Section 503(b)(9) claims. There is nothing improper about this. Bankruptcy claims are sold, or not sold, all the time for business reasons based on a number of factors that are irrelevant here. The history of Appellant's claim in this case was merely offered as a factual background to establish context for the underlying motion. This history does not excuse the deficiency in the Debtors' notice or diminish the peculiar novelty of the situation in which Appellant was trapped, facing a new statute and new hybrid claims without clear precedent as to how such claims should be asserted.

The Debtors desperately want to keep Appellant's claim treated as untimely for the sake of winning an argument. However, justice and fairness compel the conclusion that the Debtors' arguments should be rejected. Appellant asks that the Court reverse the conclusions of the

Bankruptcy Court and find that the reason for the Appellant's delay in filing its Section 503(b)(9) Claims justifies a finding of excusable neglect and an enlargement of time under Rule 9006(b).

**B.    The Debtors Would Not Be Prejudiced if Appellant Were Granted More Time To File Its Section 503(b)(9) Claims.**

Without giving proper consideration to the actual facts and circumstances surrounding the Appellant's late-filed claim, the Bankruptcy Court concluded that granting Appellant's motion would prejudice the Debtors.

Despite the Appellees' best efforts to advocate that the allowance of a legitimate administrative expense clam will prejudice the Debtors, the dilution of the recovery of other creditors does not constitute prejudice. *In re R.H. Macy & Co.*, 166 B.R. 799, 802 (S.D.N.Y. 1994); *see also In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 128 (3d Cir. 1999) (loss of windfall does not constitute prejudice); *In re Papp International, Inc.*, 189 B.R. 939 (Bankr. D. Neb. 1995) (requiring the debtor to deal with a large tardy claim does not constitute prejudice). The Appellant is not seeking extraordinary treatment catapulting itself to a superior position to the detriment of other creditors. Rather, Appellant is seeking only the equitable treatment it would have received if it had received proper notice of the Bar Date and had timely filed its Claim.

The Appellees' contention that an enlargement of time for Appellant to file its claim would open a floodgate encouraging other untimely claimants to seek similar treatment is also misplaced. Both the Bankruptcy Court and the Appellees refuse to acknowledge the highly unusual and particular circumstances enveloping Appellant's late-filed claim. There are many differentiating circumstances in this case. Appellant did not receive notice of the Bar Date; the Claim in question was a novel prepetition administrative expense claim for which standard filing

procedures had not been developed; and the Appellees were made aware of Appellant's claim during the negotiation of an essential supplier agreement, which specifically acknowledged Appellant's Section 503(b)(9) administrative expense claims. Because the facts in the instant case are highly unusual, there is no reason to assume that granting Appellant's motion would set a precedent applicable to a large number of claims in this case. The Bankruptcy Court's finding that the floodgate argument is a "viable one," Memorandum Decision at 12, is based on mere speculation and therefore erroneous.

Moreover, the Bankruptcy Court erred by failing to take into account the factors the Second Circuit has found relevant to the issue of prejudice in the excusable neglect context. The Second Circuit has routinely considered: "(1) the size of the late claim in relation to the estate, (2) whether a disclosure statement or plan [of reorganization] has been filed or confirmed with knowledge of the existence of the claim, and (3) the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated" in their determination of whether a finding of excusable neglect would prejudice the debtor. *In re Enron Corp.*, 298 B.R. 513, 525 (Bankr. S.D.N.Y. 2003; *In re Enron Corp.*, 2003 W.L. 21756785 at *5 (Bankr. S.D.N.Y. July 30, 2003; *In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995).

If adequate consideration were given to these factors, the Bankruptcy Court would have found that the enlargement pursuant to Rule 9006(b) would not prejudice the Debtors. Although Appellant's Section 503(b)(9) Claim may be a "substantial" claim in the eyes of the Bankruptcy Court, it is dwarfed by the sheer size of these cases. Further, Appellant sought enlargement of time to file its administrative expense claim prior to either a disclosure statement being filed, let alone the solicitation or the confirmation of Debtors' plan of reorganization. In fact, the

Appellees have provided no evidence in support of a finding that the late filing of Appellant's Claim would have any actual disruption to the plan or the economic model upon which the plan was formulated or negotiated.  Therefore, the allowance of Appellant's Section 503(b)(9) Claim will not disrupt the reorganization of the Debtors or prejudice its other creditors in any legitimate way or to any material extent.

Finally, the Appellees argue that a reversal of the Memorandum Decision would prejudice the Debtors by encouraging other late-filed claimants to seek allowance or by creating a precedent which could be used in other bankruptcy cases by late-filed creditors.  Such fallacious reasoning would require denial of every motion for leave to file a late-filed claim, a result obviously inconsistent with Rule 9006(b), which permits such relief on grounds of excusable neglect.  Moreover, if this Court finds that the Bankruptcy Court has erred and Appellant has successfully satisfied the requirements necessary for an enlargement of time for filing pursuant to Rule 9006(b), the ruling would serve justice in this case and should not be construed to constitute prejudice to the Debtors.

### C. Appellant's Delay in Filing Its Section 503(b)(9) Claims Was Not Unreasonable.

The Second Circuit has held that "the lateness of a claim must be considered in the context of the proceeding as a whole."  *In re Enron Corp.*, 419 F.3d 115, 128 (2nd Cir. 2005).  Courts have found that "in some cases a claim that is six months late will create substantial prejudice and interference, and in some others it will create none."  *In re Enron*, 419 F.3d 115, 128-29 (2d Cir. 2005), *citing Linder v. Trump's Castle Assocs.*, 155 B.R. 102, 108 n. 10 (D.N.J. 1993).  The six month delay in filing Appellant's claim, when considering the context of the Debtors' bankruptcy proceedings as a whole, will not impair or detrimentally impact the administration of this bankruptcy case.

Unlike the facts in *In re Enron Corp.*, where a six month delay was held to be too long, Appellant did not receive notice of the Bar Date and did not learn about it until months after the Bar Date had expired.  In fact, courts have held that much longer delays did not prevent relief, particularly in cases where lack of notice was an issue.  *See In re Thomson McKinnon Securities*, *Inc.*, 159 B.R. 146, 148 (Bankr. S.D.N.Y. 1993) (creditors allowed claim filed two years after deadline where it had not received notice); *In re Papp International, Inc.*, 189 B.R. 939, 946 (Bankr. D. Neb. 1995 (IRS allowed claim filed two years after deadline where it had received ambiguous notice).

Appellee argues that the Appellant's delay was excessive because it could have filed its Section 503(b)(9) Claims along with its general unsecured claims, paid attention to the Bar Date Notice, or checked the docket.  Appellee's Brief at 33.  These arguments are inapplicable to the "length of delay" analysis in the context of an excusable neglect determination.  Moreover, as discussed in Appellant's Opening Brief, the Section 503(b)(9) Claims were novel claims that lacked established procedures for their administration.  Thus, Appellant had no instruction on how or when to properly file this claim.  Additionally, as set out herein, Appellant had no duty to monitor the docket and was unable to "pay attention" to the Bar Date Notice because it was never received.

The Bankruptcy Court concluded that the delay was not excusable because it conflicted with the stringent timelines which facilitate the equitable and orderly administration of claims. Appellant does not dispute the importance of the Bar Date and its role in the administration of the bankruptcy case.  However, the Appellees have failed to provide any evidence which demonstrates that Appellant's delay inhibited or disrupted the equitable and orderly administration of claims in this case.  Pursuant to Appellant's essential supplier agreement and

reclamation demand, the Debtors already had actual knowledge of Appellant's Section 503(b)(9) Claims. Further, Appellant filed its Section 503(b)(9) Claims and its Rule 9006(b) motion before Debtors' Disclosure Statement or Plan were filed, let alone confirmed, and Appellee has not seriously contended that the allowance of Appellant's Section 503(b)(9) Claims would affect plan formulation or implementation in any way.

Finally, the Appellees have chosen to fixate on a passing comment made by the Appellant regarding the reason that Goodyear did not sell its Section 503(b)(9) Claim to J.P. Morgan at the time it sold its general unsecured claim.[2] The Appellees have distorted this comment and portrayed the Appellant as sleeping on its rights causing other creditors to pay for "[Appellant's] calculated maneuvering for a market advantage." Appellees' argument should be seen for what it actually is, a deliberate attempt to obfuscate and misrepresent the true circumstances of this case. The only reason that Appellant's claim is late-filed is that Appellant never received the Bar Date Notice. Appellant had no business reason to delay and engaged in no maneuvering for a market advantage in regard to the filing of its Section 503(b)(9) Claims. Rather, Appellant filed its Claims and the 9006(b) Motion in question shortly after learning of the Bar Date. Accordingly, for the reasons set forth herein, the Bankruptcy Court erred by finding that the length of delay in this case prevented a finding of excusable neglect.

---

[2] Appellant explained that it had decided not to sell its Section 503(b)(9) Claims to J.P. Morgan when it sold its other claims, "[b]ecause the market for Section 503(b)(9) Claims was not sufficiently attractive" thus "Goodyear held those claims and waited for instructions regarding how they would be administered under the new rules." Goodyear Memorandum at 16. Appellee seizes upon this statement and misconstrues and misapplies it numerous times, i.e. "Goodyear's failure to file its Section 503(b)(9) Claims was deliberate and furthered a calculated business decision" and "Goodyear's calculated maneuvering for a market advantage." Appellee Brief at 24. However, Appellee never supports its overt twisting and misconstruction of this statement with any evidence of what possible business reason or market advantage Appellant was supposedly seeking by not timely filing its Section 503(b)(9) Claims.

## CONCLUSION

The Bankruptcy Court applied an impermissibly high standard for rebutting the presumption that the Bar Date Notice was received by the Appellant and improperly rejected the Appellant's uncontested evidence concerning lack of notice without an evidentiary hearing.  The District Court should reverse the Bankruptcy Court's Memorandum Decision on these points, and direct that the Appellant's Rule 9006(b) motion be granted on these grounds alone.

In addition, even if the Appellant were presumed to have received the Bar Date Notice, the District Court should find that the novelty of the new statute codified in Section 503(b)(9) of the Bankruptcy Code, the historical manner in which administrative expense claims had been administered, and the inadequacy of the Bar Date Notice with respect to the application of the bar date to Section 503(b)(9) Claims constitute sufficient and independent reasons for Appellant's delay in filing its Section 503(b)(9) Claims and justifies a finding of excusable neglect and a reversal of the Bankruptcy Court's Memorandum Decision.

Finally, the Bankruptcy Court also erred by concluding that the Appellant's Section 503(b)(9) Claims would prejudice the Debtors and that those claims were filed too late for an excusable neglect finding, conclusions based primarily on speculation, not the evidence in the record.  These decisions of the Bankruptcy Court should be reversed as well.

For these reasons, the District Court should reverse the Memorandum Decision of the Bankruptcy Court and direct that the Appellant's Rule 9006(b) motion be granted and its Section 503(b)(9) Claims be deemed timely-filed.

18

DATED:  October 19, 2007

Respectfully submitted,

*/s/ Alan M. Koschik*
BROUSE McDOWELL L.P.A.
1001 Lakeside Avenue, Suite 1600
Cleveland, Ohio 44114
Telephone:  (216) 830-6830
Facsimile:  (216) 830-6807
Marc B. Merklin  (MM8195)
Alan M. Koschik  (AK5891)
Email:  mmerklin@brouse.com
Email:  akoschik@brouse.com

and

*/s/ Paul A. Rubin*
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY  10016
Telephone:  (212) 592-1400
Facsimile:  (212) 592-1500
Joshua J. Angel (JA-3288)
Paul Rubin (PR-2097)

*Attorneys for Appellant,*
*Veyance Technologies, Inc.*

694902