Case 1:07-cv-06169-DAB   Document 18-2   Filed 10/19/2007   Page 1 of 5

Westlaw.

25-NOV Am. Bankr. Inst. J. 24                                                                                             Page 1

American Bankruptcy Institute Journal
November, 2006

Column

Claims Chat

*24 "TWENTY-DAY CLAIMS:" THE ANTICIPATED AND UNANTICIPATED CONSEQUENCES OF CODE §503(B)(9)

Ryan T. Routh [FNa1]
Jones Day; Cleveland rrouth@jonesday.com

Copyright © 2006 by American Bankruptcy Institute; Ryan T. Routh

In the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Congress created a new priority for claims of vendors which supply goods to debtors in the 20-day period immediately prior to the debtor's bankruptcy filing. This article discusses some of the many interesting issues raised by this new priority and the impact-both intended and unintended-of this new Bankruptcy Code section on debtor-supplier relationships in general.

*The Meaning of the Language of §503(b)(9)*

Section 503(b)(9) of the Bankruptcy Code now provides an administrative priority for claims-which are referred to herein as "Twenty-Day Claims"-for goods received by a debtor in the 20-day period immediately proceeding the debtor's bankruptcy filing. Specifically, this new provision provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses...including the value of any goods received by the debtor within 20 days before the commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business."

A simple reading of this section presents several questions:

• *What are "goods?"* Section 101 of the Code does not define the term "goods." One possible source for a definition might be the Uniform Commercial Code's (UCC) very broad definition of "goods." If this is the case, "goods" might encompass things like machinery, equipment or other things that may not be thought of as "goods" within a layman's understanding of that term.

• *How can the "value of goods" be determined?* The agreed-upon purchase price should be considered strong evidence of the value of the goods. On the other hand, if the court draws guidance from other aspects of administrative claim jurisprudence, evidence of the purchase price might simply create an evidentiary presumption that a debtor (or others) might seek to rebut by introducing evidence of the claimant's cost or other evidence to show that the appropriate value is not the agreed-upon purchase price.

• *When are goods "received?"* Is it simply when goods are considered "delivered" under state law? Again, state law should apply because the Bankruptcy Code itself provides no guidance.

• *How is the "ordinary course" of the debtor's business to be determined?* While there is substantial case law discussing the meaning of "ordinary course" under §363 or 547 of the Code, it is unclear whether those legal principles should be applied to this new statute or whether new section-specific tests must be developed.

*How Is a Twenty-Day Claim Asserted?*

While the issues discussed above are apparent from a simple review of the statute, a number of interesting issues lurk below the surface. One particularly important issue for the practitioner is the determination of the procedure by which a claimant may assert its Twenty-Day Claim. The Code and Bankruptcy Rules would appear to offer multiple, and potentially conflicting, answers.

Section 503(a) of the Code provides for the filing of a request for payment of post-petition administrative expenses, which are to be allowed under §503(b) only "[a]fter notice and a hearing." By contrast, §501 provides for the filing of pre-petition proofs of claim, the Bankruptcy Rules beginning with Rule 3001 sets

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Case 1:07-cv-06169-DAB    Document 18-2    Filed 10/19/2007    Page 2 of 5

25-NOV Am. Bankr. Inst. J. 24                                                                 Page 2

forth the procedures governing pre-petition claims matters, and §502 provides that properly filed pre-petition claims are deemed allowed unless objected to. Thus, there are two distinct methods by which claimants must assert post-petition administrative claims and pre-petition claims. The new Twenty-Day Claim is a hybrid of both: it is a pre-petition claim which is given priority for payment purposes. Yet, BAPCPA does not clearly define the appropriate procedure to be followed to assert such claims.

As administrative priority claims, §503 jurisprudence arguably applies- requiring a separate notice and requisite hearing; but as pre-petition claims, the law governing the assertion of claims under §§501 and 502 and the related Bankruptcy Rule provisions also appear to be applicable.

Ultimately, in the author's view, the better view is that Twenty-Day Claims should be filed as part of the proof-of-claim process. As holders of pre-petition claims, the holders of Twenty-Day Claims are "creditors" pursuant to §101(10)(A) of the Code. This classification has important consequences. Most importantly, under Rule 3002(a), creditors "must file a proof of claim... for the claim...to be allowed." Moreover, this classification indicates that the various other provisions of the Code and Rules that apply to pre-petition claims held by "creditors" (such as bar date provisions) should also apply to Twenty-Day Claims.

There are also good practical reasons for requiring the assertion of Twenty-Day Claims through the proof-of-claim process. From a simple administrative standpoint, no debtor in a medium-sized or large chapter 11 case (and no bankruptcy court) will want hundreds (or thousands) of requests for payment of administrative priority claims flooding the docket. In addition, the procedural differences in filing proofs of claim suggest that allowing the assertion of *78 Twenty-Day Claims in proofs of claim would be the most economical and efficient means to assert such claims. For example, proofs of claim may be asserted in a simple one-page form that can often be completed and filed by a claimant itself, unlike the filing of a request for payment of administrative expense, for which there is no form and which normally must be prepared and filed by an attorney.

It probably matters less, however, what the rule is, so long as the rule is clear in a particular case. Accordingly, a debtor would be well served to ask the court for directions on this point in a motion to establish a bar date, or earlier in its case, whether §503(b)(9) claims should be filed as part of the proof of claim process and whether the bar date is intended to apply to such claims. Similarly, claimants should consider seeking clarifications to motions seeking the entry of bar date orders that do not spell out the claimant's and debtor's obligations in this regard.

### *When Is a Twenty-Day Claim Paid?*

Another important issue that is left open by the statute is when a Twenty-Day Claim is to be paid. The only applicable statutory requirement is that, under §1129(a)(9), all administrative claims, and therefore Twenty-Day Claims, must be paid by the effective date of the debtor's reorganization plan. Pre-BAPCPA administrative claim jurisprudence left questions of timing of payment of administrative claims to the discretion of the bankruptcy court. This statutory flexibility resulted in a variety of decisions, with some courts ordering that payment of certain kinds of claims (such as stub rent claims under real property leases) be delayed until the end of a chapter 11 case, and with other courts ordering early payment of other kinds of administrative claims (such as for the post-petition ordinary-course delivery of goods). It is unclear, however, to what extent this body of case law applies to the payment of Twenty-Day Claims.

A bankruptcy court faced with the issue of when a Twenty-Day Claim should be paid is left with a number of options, including the following:

*Payment in the ordinary course at the start of the case.* A bankruptcy court could order a debtor to pay all Twenty-Day Claims in the ordinary course at the start of the debtor's bankruptcy case. Such an order would, however, create an administrative burden for the debtor, and would essentially require the debtor to know almost immediately after filing its cases the amounts of such claims (even prior to the debtor's filing of its schedules of assets and liabilities). It is dif-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06169-DAB   Document 18-2   Filed 10/19/2007   Page 3 of 5

25-NOV Am. Bankr. Inst. J. 24                                                                                                                     Page 3

ficult to square such an order with the requirements of §§501, 502 and 503 of the Code and the related Bankruptcy Rules, which suggest that such claims must be filed by the claimants, and that litigation over pre-petition claims is to be initiated by debtors, not creditors. Moreover, such an order could put a substantial liquidity strain on the debtor at the start of the bankruptcy case.

From a purely legal perspective, this solution may be inappropriate due to the lack of the legal grounds that normally support payment of ordinary-course *post-petition* administrative claims. Most courts in pre-BAPCPA cases have stated that post-petition administrative claims are paid in the ordinary course because they are transactions with the post-petition debtor-in-possession. Twenty-Day Claims, however, do not arise from a transaction with the DIP, but arise from a transaction with the pre-petition debtor. Accordingly, the reason normally given for ordinary-course payment is simply inapplicable. In this way, Twenty-Day Claims appear to be more akin to other pre-petition priority claims (such as tax claims) that get paid only after a plan is confirmed and becomes effective.

*79 *Payment upon allowance.* Alternatively, the bankruptcy court could simply order each claim paid as it is allowed "after notice and a hearing" as required by §503 of the Code. Practically speaking, this would create a true administrative nightmare for debtors in large cases. In light of the number of claimants potentially holding Twenty-Day Claims, a large debtor could expect hundreds (if not thousands) of such requests for payment to be filed early in its chapter 11 case in a stampede to the courthouse. This would essentially require the debtor to embark upon substantial claims litigation immediately after the filing of the chapter 11 case instead of delaying such litigation until after schedules are filed, a bar date established and a reconciliation of such claims is completed by the debtor. If substantial amounts of such litigation proceeded outside of the normal claims process, the resources of the bankruptcy court could be stressed as well. It is difficult to square this result with the policy behind the automatic stay: to grant debtors a "breathing spell" at the start of their chapter 11 cases.

*Payment at the end of the case.* In light of the negative aspects of the approaches described above, the payment of all Twenty-Day Claims at the end of the case might be the most attractive approach. Payment at the end of the case would ensure equality of treatment for creditors. If Twenty-Day Claims are to be filed along with proofs of claim, this would also give the debtor time to reconcile and assert objections to such claims and provide for time for the parties to litigate or settle such claims prior to payment within the traditional claims process. Notwithstanding these benefits, payment at the end of the case could require suppliers to wait a substantial amount of time for payment, which arguably is contrary to the spirit of §503(b)(9) to benefit trade creditors and mitigate the impact of the chapter 11 process on them.

*Payment at the debtor's discretion.* In light of the fact that payment at the end of the case may be the most appropriate, justifiable and efficient of the three potential outcomes proposed above, creditors and debtors both might prefer a system where payment is *required* by the end of the case but can be made sooner at the discretion of the debtor. Such a scheme would sacrifice equality of treatment of creditors in exchange for a debtor to pay claims early where circumstances warrant, such as where a supplier is having economic difficulties or where the supplier is willing to offer the debtor consideration (such as trade terms) in exchange for early payment. In this way, the decision of when to pay Twenty-Day Claims would become similar to the decision to assume an executory contract or unexpired lease: The debtor must assume and pay the cure amount by the end of the case, but it can do so sooner if beneficial to its bankruptcy estate.

In the absence of any statutory guidance, other options may also be available. To date, there is no reported decision answering the question of when Twenty-Day Claims are to be paid. As a result, it is expected that this issue will generate litigation in the years to come.

### Other Impacts on Debtors and Suppliers

Beyond the issues discussed above, the enactment of §503(b)(9) has created a host of indirect consequences that may not have been anticipated by the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06169-DAB    Document 18-2    Filed 10/19/2007    Page 4 of 5

25-NOV Am. Bankr. Inst. J. 24                                                                Page 4

drafters of this provision.

*A new market for claims traders.* The creation of a large class of priority claims has impacted and increased the role of claims traders in bankruptcy cases. Through the creation of the §503(b)(9) priority, there now exists a large class of trade claimants who hold claims that must be paid in full upon a debtor's emergence from bankruptcy, but who may wish to liquidate those claims in the near term. For large chapter 11 cases anticipated to last several years, the demand from claimants for a way to obtain cash for these claims may be great. Rather than litigating the timing of payment issue in the bankruptcy court, creditors may prefer to sell their Twenty-Day Claims to claims traders.

From the claim trader's perspective, the traditional research (and guesswork) associated with establishing the value of unsecured claims is removed from the process, as the claims trader need not estimate the likely amount of unsecured claims as a whole or the amount of assets to be set aside for distribution to creditors as it does when estimating the value of general unsecured claims. Instead, the only variables that should influence the amount to be paid for claims are the anticipated length of the case, the applicable discount rate to be applied and the potential for administrative insolvency of the debtor. Accordingly, claims traders should be able to determine and offer healthy percentage payments for such claims shortly after the commencement of the bankruptcy case. In fact, recent cases have shown that such claims can sell for more than 80 cents on the dollar.

*Improved debtor-supplier relations.* Because a supplier will be paid in full for its Twenty-Day Claim no later than the end of the debtor's chapter 11 case and will potentially be able to liquidate this claim earlier, the animosity that is sometimes directed toward a debtor by its suppliers may be mitigated. This should assist debtors in achieving a soft landing in chapter 11.

*Increased liquidity strain on debtors.* Traditionally, a chapter 11 filing results in a cash flow boost to a debtor since, after a chapter 11 filing, receivables will normally continue to be paid to a debtor by its customers, but payables to suppliers will be suspended to the extent that such amounts are for pre-petition claims. To the extent that a debtor is required to pay Twenty-Day Claims (or the debtor's supplier demands that it do so), this will reduce the cash flow benefit traditionally associated with a bankruptcy filing.

*Decreased critical-vendor leverage for debtors.* Prior to BAPCPA, a debtor could entice a recalcitrant supplier to do business with it by offering the benefit of a critical-vendor payment in exchange for the postpetition extension of trade terms. If suppliers know they will receive partial payment of their pre-petition claims by the end of the case even if it does not extend terms to or continue do business with the debtor, the benefits associated with critical-vendor payments may be lessened, which results in a corresponding reduction in a debtor's leverage over its suppliers.

*\*80 Impact on critical-vendor relief.* Indeed, the potential for payment of Twenty-Day Claims may limit the need for debtors to seek authority to pay the claims of their "critical vendors" in the first place, or could be used as one of the justifications for such a program. Whereas in the past the main carrot to be dangled in front of suppliers was payment of critical-vendor monies, a debtor now might seek to use early payment of Twenty-Day Claims as the primary incentive for suppliers. Such debtors might eschew seeking authority to pay critical vendors at all, or might seek to restrict such relief to the limited amounts granted priority under §503(b)(9). Such a strategy might be particularly useful for a debtor that desires to file in a jurisdiction where critical vendor relief is subject to enhanced scrutiny.

*Decreased importance of reclamation rights.* Another consequence of the introduction of the new §503(b)(9) priority is that reclamation claims under §546(c) have decreased in importance. In the past, obtaining reclamation priority was the only means for a trade creditor that supplied goods to a debtor prepetition to obtain priority of payment. Now, because goods delivered to a debtor in the 20 days prior to bankruptcy will have automatic priority, reclamation rights are mainly beneficial for goods delivered in the 21 to 45 days prior to the bankruptcy filing under

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

§546(c) of the Code. Because goods shipped in that period are much more likely to be consumed (and therefore no longer identifiable) than those shipped on the eve of bankruptcy, many suppliers will find that their reclamation claims have little or no value in excess of their Twenty-Day Claims, making them of decreased importance in chapter 11 cases.

*Conclusion*

While a seemingly minor revision to the Code, the enactment of §503(b)(9) has greatly shifted the dynamic between debtors and their suppliers in a number of interesting, untested and unexpected ways. The various issues raised by and consequences of this provision-including those described above-will present themselves and be litigated before the nation's bankruptcy courts in the years to come.

[FNa1]. *Ryan Routh is a Business Restructuring and Reorganization associate in the Cleveland office of Jones Day and has substantial experience in claims-litigation matters in bankruptcy courts in Delaware, New York and Ohio.*

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.